KATHELEEN WILLIAMS, Appellant, v. CRUSADER DISCOUNT CORP., a Corporation, SAUL S. SILVERMAN, JAMBOREE, INC., a Corporation, K. H. VITT, and KARSTEN T. BRONKIN, Respondents.

No. 4121

January 29, 1959 334 P.2d 843

*Zenoff & Magleby,* of Las Vegas, for Appellant.

*Jones & Pursel,* and *Christensen & Bell,* of Las Vegas, for Respondents.

## OPINION

By the Court, McNamee, J.:

This case involves four agreements, consisting of two loan agreements and two guaranty agreements.

The parties will be referred to as follows: Katheleen Williams, plaintiff and appellant, as Mrs. Williams; John H. Williams, her husband, one of the cross-defendants, as Mr. Williams; Crusader Discount Corp., a defendant, cross-complainant, and respondent, as Crusader; Jamboree, Inc., a defendant and respondent, as Jamboree; K. H. Vitt and Karsten T. Bronkin, defendants and respondents, as Bronkin and Vitt.

On June 28, 1955 Crusader and Jamboree entered into an agreement under the terms of which Crusader loaned

Jamboree $68,500 and Jamboree gave Crusader a note for $12,000 due October 1, 1955, and a further note for $56,500 due on March 27, 1957, with interest on both notes due and payable quarterly. This agreement which hereafter shall be referred to as the first loan agreement, further provided that in the event of nonpayment of any installment of principal or interest on its due date, the entire unpaid balance would immediately become due and payable.

Concurrently with the execution of this first loan agreement Mr. and Mrs. Williams entered into a guaranty agreement of same date with Crusader wherein they guaranteed its said loan of $68,500 to Jamboree to the extent of $59,280 and as collateral security for their guaranty they transferred and assigned to Crusader a certain note secured by deed of trust from Bronkin and Vitt to them as joint tenants in the principal sum of $59,280. This guaranty agreement is hereinafter referred to as the first guaranty agreement.

Jamboree failed to pay the installments of principal and interest due October 1, 1955 to Crusader.

On April 10, 1956 Crusader and Jamboree entered into a new loan agreement, hereinafter referred to as second loan agreement, wherein Crusader reduced the original debt of $68,500 to $59,280, extended the times of payment of the first installment of interest and principal, and otherwise substantially changed the first agreement.

This second loan agreement was executed by Jamboree through John H. Williams as its president and Robert E. Jones as its secretary, and by Crusader through its president and assistant secretary and recited: "It is understood and agreed that this instrument constitutes the full and complete understanding between the parties and the provisions herein contained may only be amended by an instrument in writing executed by all of the parties hereto."

The second loan agreement provides further that: "Concurrently with the execution of this agreement, John H. Williams, a stockholder of Jamboree, has executed an agreement whereby the said John H. Williams guarantees the said loan. In such guaranty agreement

the said John H. Williams warrants that there are no liens prior to the Deed of Trust securing the debt of $59,280 due from Bronkin and Vitt to the said Williams."

The guaranty agreement referred to in said second loan agreement was also dated April 10, 1956, and will be referred to as the second guaranty agreement and although it recites it to be the agreement of Crusader with Mr. and Mrs. Williams as guarantors, it is executed only by Crusader and Mr. Williams. In this second guaranty agreement Mr. Williams guarantees the loan contained in the second loan agreement, and it recites that he transfers and assigns to Crusader the said Bronkin and Vitt note and trust deed as collateral security for the loan in the second loan agreement.

No issue is made as to Mrs. Williams' ownership of a half interest in the Bronkin and Vitt note and trust deed at the time the first guaranty agreement was executed; the primary question before this court is what effect have these four agreements had on her said interest in the Bronkin and Vitt note and deed of trust.

The parties to the first and second loan agreements were the same, and it is clear from the terms of the second loan agreement that they intended to substitute the second loan agreement for the first.

This substitution of a new obligation for an existing one effects a novation, which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation. 66 C.J.S., Novation, sec. 1, p. 681; 39 Am.Jur., Novation, sec. 2, p. 254.

It is settled law that the novation of a contract, the performance of which is guaranteed by sureties who do not consent to the novation absolves them of their liability, which disappears with the debt to which it was collateral. 66 C.J.S., Novation, sec. 22, 39 Am.Jur., Novation, sec. 27.

"Guarantors and sureties are exonerated if the creditor, by any act done without their consent, alters the

obligation of the principal in any respect, or impairs or suspends the remedy for its enforcement. Where after breach of contract, the performance of which is guaranteed, the creditor and principal debtor enter into a new contract by which the amount of damages then due is made payable on a future day, and upon terms different from those imposed by the original agreement, such new contract presumptively merges the old. In such a case the new obligation * * * becomes the exclusive medium by which the rights of the parties in respect to the payment of damages are to be ascertained. Such a contract is not collateral to the original, but, in respect to the subject to which it appertains, it merges and supersedes the other." Weed S.M. Co. v. Winchell, 107 Ind. 260, 7 N.E. 881, 884.

"[A] surety is discharged by the novation of the debt; for he can no longer be bound for the first debt for which he was a surety, since it no longer subsists, having been extinguished by the novation; neither can he be bound for the new debt, into which the first has been converted, since this new debt was not the debt to which he acceded." Frost v. Harbert, 20 Idaho 336, 118 P. 1095, 1096, 38 L.R.A. (NS) 875.

The rule of law that a novation substituting a new obligation for an old releases the guarantor of the old when the transaction is accomplished without his consent, has been carried over into the law of suretyship, 72 C.J.S., Principal and Surety, sec. 155, p. 643; See Restatement, Security, sec. 128, 129. Under the rules governing sureties it is sometimes known as the rescission theory and can be stated as follows: Any change in the contract between the creditor and principal which creates a different duty of performance on the part of the principal than that which the surety guaranteed, discharges the surety. The alteration of the original contract between the creditor and the assenting debtor has the legal effect of discharging it by mutual rescission, and substitutes therefor a new and different contract. The surety cannot be held for performance of the old contract so discharged; nor can he be held for the sub-

stituted contract the performance of which he never guaranteed. See Simpson, Suretyship, pp. 330, 331, 354.

Other reasons given for the discharge of the surety as applied to that kind of an alteration of the original creditor principal debtor agreement which consists of an extension of time to the principal debtor are: (1) The surety's right to pay the debt at its original maturity and to proceed either by subrogation or reimbursement against the principal debtor has been postponed by the extension of the maturity of the debt; and (2) an extension of time of payment of the debt constitutes a material alteration of the surety's contract, in that the surety's risk of the principal's nonperformance has been increased by the act of the creditor. 72 C.J.S., Principal and Surety, sec. 162.

In applying these principles to the situation here, the inevitable conclusion is that Mrs. Williams was legally exonerated from her guaranty agreement of June 25, 1955, upon all of the grounds heretofore stated because the record shows that she did not consent to the novation or to this new transaction, (second loan agreement) between the principal debtor and creditor. Boteler v. Conway, 13 Cal.App.2d 79, 56 P.2d 587. Since she is released from her personal obligation as surety, her collateral security consisting of her half interest in the Bronkin and Vitt note and trust deed, likewise is discharged. 50 Am.Jur., Suretyship, sec. 45, p. 935. She therefore is entitled to receive the value of this interest which, as appears from the record has been liquidated by the payment in full of the Bronkin and Vitt note. Dehors the record and only in the oral argument before this court, it was represented that all the proceeds from the payments in satisfaction of said Bronkin and Vitt note have been paid over to Crusader, except the sum of $4,000 which, with the consent of Mrs. Williams, was paid as a commission to a real estate broker. This court has no way of determining from the record the amount of money realized by Crusader through this source.

The trial was held upon the issues raised by the complaint of Mrs. Williams and a cross-claim of Crusader.

The cross-claim set up as an exhibit thereto the second guaranty agreement between Crusader and Mr. Williams which expressly refers to the new loan agreement between Crusader and Jamboree, "changing the amount of the loan and the terms relating thereto", and reciting that the Bronkin and Vitt note "is tranferred, assigned and set over to Crusader as collateral security for the loan being made this date (April 10, 1956) to Jamboree. All of the allegations of this cross-claim were admitted by Mrs. Williams and she pleaded as an affirmative defense to the cross-claim her discharge from her guaranty of June 28, 1955 because of this new guaranty agreement between Crusader and Mr. Williams, and she introduced in evidence in support of this affirmative defense the second loan agreement, to which the second guaranty agreement referred.

Upon the conclusion of Mrs. Williams' evidence, Crusader moved for a nonsuit (involuntary dismissal) as to Mrs. Williams' complaint, and for entry of judgment in its favor under the prayer of its cross-claim. The motion was granted and the trial court entered judgment to this effect and decreed Crusader to be the owner of the Bronkin and Vitt note and trust deed and entitled to the proceeds therefrom. Mrs. Williams' appeal is from this judgment.

Based on the admissions in the pleadings and the evidence properly received with respect to Crusader's cross-claim, this court concludes that the trial court erred in holding that Crusader was the owner of the Bronkin and Vitt note and trust deed and entitled to all the proceeds received therefrom; that it should have found for the reasons stated, that Mrs. Williams was entitled to one-half of such proceeds.

The judgment is reversed and the case remanded for such further proceedings as may be warranted after the trial court has set aside its order dismissing the complaint.

The appellant is allowed her costs.

MERRILL, C. J., and BADT, J., concur.