THOMAS G. HARVEY, DALLAS J. SEEVERS, WALTER L. STATES, T. P. BOTTI, JOSEPH LEROY GEACH, JR., AND JOHN W. KIRKLEY, EXECUTORS OF THE ESTATE OF DONALD C. KITSELMAN, DECEASED, SADIE HANNUM, GUARDIAN OF THE PERSONS AND ESTATES OF MARJORIE EVELYN KITSELMAN AND LESLIE JANE KITSELMAN, MINOR CHILDREN, SANDRA LEA HANNUM, AND THE UNKNOWN EXECUTOR, EXECUTRIX, OR ADMINISTRATOR, OF THE ESTATE OF JUNE KITSELMAN, DECEASED, BENEFICIARIES OF THE DONALD C. KITSELMAN LIVING TRUST, APPELLANTS, v. JACK STREETER, TRUSTEE OF THE DONALD C. KITSELMAN LIVING TRUST, RESPONDENT.

No. 4839

April 14, 1965          400 P.2d 761

*A. D. Jensen,* of Reno, for Appellants.

*Streeter, Sala, Richards & McAuliffe,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

This is an appeal from an order of the court below in an action brought by the Nevada Bank of Commerce, a domestic banking corporation, and Jack Streeter, trustees of the Donald C. Kitselman living trust, against the above-named appellants. The trial court awarded certain trustee's fees to the corporate trustee, from which award no appeal has been taken, leaving the respondent Jack Streeter as the sole respondent herein.

On March 3, 1959, Kitselman created an inter vivos trust to insure adequate financial care for himself and his family. There was a spendthrift provision which manifested his intention to preserve his assets from the reach of creditors. The net income of the trust was to be used for the reasonable support of the Kitselman family during the lifetime of the settlor, and to pay the debts incurred by the settlor and his family. The trust was irrevocable and the settlor waived all right and power to alter or amend the trust indenture.

Kitselman transferred all his assets to the trust. The trust was irrevocable during his lifetime, and upon his death, the trustees were to pay over all the trust's assets to the estate of the grantor.

The trustees were Jack Streeter, the Nevada Bank of Commerce, and Mr. Kitselman. The trust assets at this time were of a value of approximately $150,000.

Mr. Streeter and Mr. Johnston of the Trust Department of the Nevada Bank of Commerce contacted all the Kitselman creditors and assured them of payment. They evaded an estimated fifteen law suits thereby. They arranged for loans from the Nevada Bank of Commerce totaling over $101,000, which was used to pay off the creditors. The trustees then arranged a budget for the

Kitselmans to live on; figured and paid their taxes; repaid these and other loans to the bank; and paid off all loans on the Kitselman's insurance policies, paid the delinquencies thereon, and got them reinstated. The record shows a tremendous amount of work on the part of Mr. Streeter and Mr. Johnston in the straightening out and the handling of the Kitselman affairs.

At Mr. Kitselman's request, an advisory board was set up to pass upon the validity of the claims presented to the trustees for payment, and the personal expenses of the Kitselmans. This board included the three trustees and later, at the request of the trustor, there were added Tilli Botti, and Dallas Seevers, as advisory trustees. To defray their losses of business while attending these meetings, all board members except the bank received $10 per meeting, which amount was later raised to $35.

Mr. Kitselman died in August of 1960. At his death the trust corpus was over $1,200,000, and his estate was valued at over $2,000,000. Thus the living trust had an existence of a little over seventeen months.

The trustees attempted to submit their final accounting to the executors of the Kitselman estate, but this was refused. After some transactions whereby stock was sold and the bank loans paid off, this action was commenced praying for the allowance and settlement of the trustees' accounts, for allowance and payment of trustees' fees and attorney fees, for leave to transfer the balance of the trust estate over to the executors of the last will of Donald C. Kitselman, deceased, and for the trustees' discharge of their trust. The bank relinquished its right to over $34,000 in trustee's fees as set up by the trust instrument, and elected to accept a trustee's fee of $9,576.95, and the estate was to deposit all its funds with the bank, thereby guaranteeing it greater remuneration as a depository.

Mr. Streeter received $175 as a member of the advisory board[1] for meetings thereof, but received no fee for

---

[1]Appellants have much to say about this "advisory board"; that there is no provision in the trust agreement for an advisory board; and that the matters hereinafter discussed concerning payment of fees to the advisory board for attending meetings can refer only to the trustees actually created by the trustor. We do not accord this

his activities as a trustee. He also received no fee as attorney for the living trust *after* the death of Mr. Kitselman. His complaint claims $24,098.73 as trustee fees up to and including January 11, 1964; and $416.66 per month until settlement of the final account. The complaint also seeks $4,496.00 in legal fees, plus $55.31 in costs, and prays for an allowance of $50 per hour for legal fees to be furnished until the account is settled.

The trial court ordered the executors to accept the final account, and awarded the bank trustee fees of $9,576.95, which appellants do not contest. The court also awarded Mr. Streeter $5,050.00 in legal fees, and $55.31 in court costs, and $5,600.00 in trustee fees. From the award to Mr. Streeter, this appeal is taken.

Two assignments of error are asserted: (1) that it was error to award any fees to Mr. Streeter as trustee; and (2) that it was a like error to award any fees to Mr. Streeter as attorney for the trustees of the living trust.

The trust instrument, after providing for fees to the corporate trustee on a percentage basis, provided: "The other two trustees shall be paid a fair and just compensation for their services rendered." The other two trustees were Mr. Streeter and the settlor-beneficiary Donald C. Kitselman. The trust agreement further provided:

"Grantor recognizes that Jack Streeter is an attorney at law and shall act as such attorney for this trust estate, and shall be entitled to charge and be paid for all business done by him as attorney for this trust estate, in the same manner as if he were not a Trustee.

\* \* \* \* \*

"Upon the death of Grantor, this trust shall terminate

any great significance. About May 14, 1959, at the request of the settlor an advisory board of trustees was created. It was felt that they should be compensated, and at a meeting of May 21, 1959, a fee of $10 per meeting was fixed to be paid to the board, excepting the corporate trustee. Virtually all the work was done between meetings by the corporate trustee and Mr. Streeter. They prepared the agenda for the advisory board meetings, which consisted of a mere presentation of what had been done, for the general approval of the advisory board.

and the remaining trustees or trustee shall pay and distribute all trust income and property to the estate of the Grantor. * * *"

The trial court's findings and reasoning in making the order allowing fees appear fully from its decision, from which we quote the following:

"That JACK STREETER is entitled to be awarded attorneys fees for all legal services rendered subsequent to the death of DONALD C. KITSELMAN on August 5, 1960, and that said legal services for all purposes herein are confined to those performed in connection with the instant action and accounting. The record reveals without contradiction that STREETER has spent at least 130 hours to date of hearing (August 24, 1964) as an attorney and that a reasonable hourly fee should be set at $35.00 per hour or the sum of $4,550.00. Additionally, he is entitled to attorney fees of $250.00 for the one day hearing in Court plus the additional $250.00 for the Answering Brief filed herein subsequent to the hearing, for a total in all of $5,050.00. Additionally, STREETER is entitled to fee as Trustee for services rendered before DONALD C. KITSELMAN'S death (March 3, 1959, to August 5, 1960) for a total of 1,500 hours and for Trustee's fee since the death of DONALD C. KITSELMAN for a period of over four years estimated (by Streeter and Mr. Johnson [trust officer of the bank trustee] at approximately 500 hours, AND THAT A REASONABLE VALUE FOR THESE SERVICES AFTER GIVING DUE CONSIDERATION TO THE FOLLOWING IS AS HEREINAFTER SET FORTH:

"(a) The value of the trust estate as of date of its creation March 15, 1959, estimated value was $150,000.00 which has now been increased to $1,280,000.00[2] plus $940,954.00 which is not part of the trust assets but part of the decedent's estate totaling in all $2,220,923.84 at the present time.

"(b) The amount of capital and income received and disbursed by the trustees.

"(c) The wages or salary customarily granted to

---

[2]This large increase is due in the main to sale of the stock of a family corporation in Indiana.

agents or servants for performing work in the community.

"(d) The success or failure of the administration of the trustees.

"(e) The amount of risk and responsibility assumed; he risked his professional reputation by assuring numerous creditors that they would be paid; he assumed the risk of being responsible for what is now a sizeable estate; he assumed the responsibility for two adults and three minor beneficiaries for a period of about 16 months during DONALD C. KITSELMAN'S life time. Without relating the facts the personal and financial problems facing this family at time of creation of trust were great with STREETER being burdened with the personal problems of this family as well as the financial end.

"(f) The time consumed in carrying out the trust the record revealing (uncontradicted) that STREETER spent approximately 2000 hours in his capacity as trustee since the formation of this trust.

"(g) The custom in the community as to allowances to trustees by settlors or courts as to charges exacted by trust companies and banks; * * *.

"(h) What STREETER has received to date for services prior to DONALD C. KITSELMAN'S death as reflected in the Bank's accounting to-wit:"

Here the court lists three aggregate items in the respective sums of $750, $3,343.52, and $1,000 for professional services.

"In this connection it is noted that all of said sums (except the Advisory Board meetings) were paid and specifically designated throughout for his professional legal services and not for services as trustee—so that STREETER has never been actually compensated for his services as trustee and it is unreasonable to assert that the $175.00 sum should be considered payment in full for such services in this case; in this connection the Court admittedly has had some difficulty in separating Mr. Streeter's services as attorney and as trustee (a certain amount of intermingling necessarily must exist) both before and after DONALD C. KITSELMAN'S

184

death—which will be given due consideration by the Court in setting its trustee fee; Streeter's fee as trustee is generally established by the trust agreement, i.e., 'shall be paid a fair and just compensation' the Nevada Bank of Commerce fee is set separately on percentage basis. The Court will allow $200.00 per month for the 16 months of KITSELMAN'S life March 3, 1959, to August 5, 1960, or $3,200.00 and $50.00 per month for four years after death or $2,400.00 for a total of $5,600.00. Court costs in the sum of $55.31 disbursed by STREETER in connection with this action should be reimbursed."

It seems clear that the trial court took into consideration the usual criteria for fixing attorney fees. See Sarman v. Goldwater, Taber and Hill, 80 Nev. 536, 396 P.2d 847.

All fees for legal services were limited by the court to services performed after the death of Kitselman, namely, those connected with the instant action and accounting.

■■■■■■■■

The matters determined by the court were matters of fact, in which this court has no disposition to interfere if finding substantial support in the record. We think it is clear that the record accords such substantial report.

■■■■■■■■

It may be said to be the general rule that a trustee is entitled to compensation unless he voluntarily serves without pay or waives his right to compensation. The amount of the compensation is fixed either by the terms of the trust instrument, by contract between settlor and trustee, by statute or by court action. Bogert, Trusts and Trustees, 2d Ed. (1962) § 975, at 280–282. Here the trust instrument itself provided that the trustees should receive fair and just compensation. Our own statutes on the administration of trusts provide, NRS 153.070: "On the settlement of each account of a trustee the court shall allow the trustee his proper expenses and such compensation for services as the court shall deem just and reasonable. * * *" The posture of the matter below was the submission of the trustee's final account of the

trust, so that it was entirely in order for the court to fix fees. Bogert, § 977, applies to the court's award of compensation the general rule so often applied to all factual matters by this court, to wit, that the lower court's award "will not be set aside on appeal if there is [substantial] evidence to support the award." The text then proceeds to cite factors that may be influential in enabling the court to reach a proper conclusion as to the appropriate amount to be allowed. The court below applied virtually all the factors named in the text.

Appellants submit numerous authorities to the effect that if the trustee's fees as provided in the trust instrument or by agreement are unsatisfactory to the trustee, his single remedy is to decline to act. He may not continue to act as trustee and then claim a higher award. We may concede this rule for the sake of argument. However, appellants do not succeed in a proper application of this rule to the facts of the case. They cite the minutes of one of the meetings of trustees in which it is stated that the trustees were to be allowed $10 for each meeting they attended. They then cite the minutes of a later meeting showing that this amount was raised to $35. They then assert that the acceptance of this sum was a waiver of any demand for a greater sum. Under the arrangement Mr. Streeter would have been allowed an aggregate sum of $175 for his fees as trustee. As noted above, the trial court held that this is entirely unreasonable, and we agree. The appellants contend that the provisions of the trust instrument governing the fees to be paid the trustees was superseded by a later agreement that the trustees were to receive $10 for each meeting (which was subsequently increased to $35 per meeting). The record does not support them. There is no evidence to show that the fixed compensation for each meeting was to displace the trust provisions that the trustees "shall be paid a fair and just compensation for their services."

Whether or not the trust agreement provided for an advisory board of trustees, the settlor-beneficiary requested that two of his friends act in an advisory

capacity and this was done. As they were compelled to absent themselves from their occupations to attend the meetings, it was considered proper that they be compensated, and it cannot be gainsaid that their approval of expenditures and items of such nature was a salutary procedure, and satisfied any doubts in the trustor's mind as to the propriety of disbursements by the trustees.

Under the specific provisions of the trust agreement the propriety of awarding just and reasonable compensation to the trustees and the propriety of awarding legal fees to the attorney representing the trust is, we think, beyond question.

The judgment is affirmed.

THOMPSON, J., and MOWBRAY, D. J., concur.

MCNAMEE, C. J., being absent on account of illness, the Governor commissioned Honorable John C. Mowbray, of the Eighth Judicial District, to sit in his place.