IAN A. BRIGGS, Appellant, v. ARNOLD
ZAMALLOA, Respondent.

No. 5311

October 24, 1967                    432 P.2d 672

*Alvin N. Wartman,* of Las Vegas, for Appellant.

*Hawkins & Cannon,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, J.:

Appellant (defendant below) appeals from a judgment of the trial court on a construction contract awarding respondent (plaintiff below) $10,740. Respondent cross appeals from a judgment for appellant, through his counterclaim below based upon a promissory note, in the amount of $8,200.61. These judgments were offset by the trial court and respondent recovered a net judgment against appellant in the amount of $2,539.39. We sustain the action of the trial court and affirm the net judgment for respondent.

In 1958 the parties entered into a written contract, prepared by appellant, which provided: (1) Briggs would obtain a lease for a certain piece of real property; (2) Zamolloa would build a house on the land, using his labor as much as possible, and for his labor and supervision would be compensated at $4 per hour; (3) Briggs would pay all bills for materials and labor as they became due, with the exception of Zamalloa's labor; (4) Briggs would receive payment for all furniture and carpets supplied and sold with the house; (5) Briggs would receive 10 percent interest on all moneys advanced by him; and (6) any profit remaining from the sale of the house, after deducting the foregoing items, would be divided between the parties equally. Zamalloa had no contractor's license. Nothing was said by either party about that matter, nor was it included as a requirement in the contract.

The land was acquired, apparently in fee, and Zamalloa commenced work upon the house. He kept time cards and evidence of expenses incurred. He bought supplies on the account of Briggs and a third party. He worked upon the house and supervised others in the actual construction. He consulted with Briggs on substantial decisions. Briggs paid most of the labor and material bills.

The parties contemplated that it would require one and one-half years to build the house. It actually required four and one-half years to complete. It was then listed with a real estate broker for sale, who had difficulty locating a buyer. The house, valued at $28,000, was finally sold for $12,000 and the equity in the buyer's home. Zamalloa objected to the

value assigned the buyer's home in the trade, but accepted it when told by Briggs the transaction was consummated. Briggs, who handled the entire sales transaction offered the equity in the traded home to Zamalloa as his compensation. Zamalloa refused the offer. Briggs then received the $12,000 and took title to the traded home in his own name, paying Zamalloa $500.

Prior to these events, and in an entirely separate transaction in 1955, Zamalloa borrowed $5,875 from Briggs and gave him a note payable at $75 per month, bearing 10 percent interest per annum. It was secured by a deed of trust on Zamalloa's home. Regular payments were made on the note until 1959 when Zamalloa informed Briggs he could no longer meet the monthly amounts. Briggs orally agreed to credit Zamalloa's payments from the house under construction, when sold, and treat that payment as if made in accordance with the terms of the note.

In 1962 Zamalloa commenced a suit against Briggs seeking payment for his labor in constructing the house. Briggs denied owing Zamalloa anything and affirmatively raised the defense of Zamalloa's lack of a contractor's license as provided in Chapter 624 NRS. Briggs also sought by counterclaim to recover $4,546.20 principal and interest at 10 percent per annum from December 1959 to date of the judgment on Zamalloa's note. The trial was held in 1963, but the judgment was not entered until 1966.

The trial court found for Zamalloa in his action against Briggs and ruled the 1958 contract was one for hiring of labor, thereby freeing Zamalloa of the necessity of alleging and proving a contractor's license (NRS 624.320); found Briggs owed him $10,740 ($11,240 less $500 previously paid), and entered judgment in that amount. The court also found against a theory advanced by Briggs that they were joint adventurers.

On Brigg's counterclaim, the court rejected Zamalloa's contention of forgiveness of interest on Zamalloa's note, rejected setoffs of the amount owed prior to liquidation of the sums, and awarded Briggs judgment against Zamalloa for $4,546.20 principal, plus interest at 10 percent per annum from 1959 to the date of judgment in 1966 of $3,654.41, or a total of $8,200.61.

The court then offset these respective judgments and entered judgment in favor of Zamalloa against Briggs for $2,539.39 and ordered reconveyance to Zamalloa under the Briggs deed of trust. The parties appeal from the respective judgments in favor of the other.

The issues thus presented for our determination are:

(1) Was the finding by the trial court that the contract was one for labor incorrect as a matter of law?

(2) Was the trial court's judgment awarding interest on Zamalloa's note to Briggs from 1959 to date of judgment correct as a matter of law?

Appellant contends vigorously we should rule from the record before us that Zamalloa was either a contractor, requiring a license, or a joint adventurer with Briggs which would alter substantially the judgments entered. Appellant asks us to distinguish the leading California case of Norwood v. Judd, 209 P.2d 24 (Cal. 1949), followed by our court in Magill v. Lewis, 74 Nev. 381, 333 P.2d 717 (1958), and a later California case of Denton v. Wiese, 300 P.2d 746 (Cal. D.C.A. 1956), from the issue presented in this appeal. That point is not reached in this case. We conclude, as held in Denton v. Wiese, supra, the initial determination of the status of a person is a question of fact, depending upon all the circumstances of the parties' relations. In Denton the California court quoted from Frugoli v. Conway, 213 P.2d 76, 78 (Cal. D.C.A. 1950), which held, "When those circumstances disclose a mixed relationship of employment, the finding of the trial court based on substantial and competent evidence cannot be disturbed." We said in Bartsas Realty, Inc. v. Leverton, 83 Nev. 87, 423 P.2d 397 (1967), "It is not the function of this court to readjust factual findings specifically determined by the court below." Utter v. Casey, 81 Nev. 268, 401 P.2d 684 (1965). We also held in Lawry v. Devine, 82 Nev. 65, 67, 410 P.2d 761 (1966), "It is well established that the factual findings of the trial court will be sustained at the appellate level if there is any substantial evidence supporting them." Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747 (1944); Close v. Redelius, 67 Nev. 158, 215 P.2d 659 (1950). If we were to conclude as a matter of law the contract was not one for labor hire as found by the trial court, we could not thereafter resolve the facts ourselves and say it was either a contractor relationship or a joint adventure. We would be obligated to remand the matter for a new trial.

For the same reason cited above, we sustain the trial court's judgment on Briggs' counterclaim on the note. There was substantial conflicting evidence to support the trial court's determination that there was no waiver of the interest by Briggs.

We are unable to say, as a matter of law, the trial court

committed any error in the manner in which it resolved the issues.

Judgments affirmed.

THOMPSON, C. J., and ZENOFF, J., concur.