FRANK MONTROSE, APPELLANT, *v.* CAMILLO SCHNEIDER, RESPONDENT.

No. 5372

June 4, 1968                    441 P.2d 684

*Foley Brothers,* of Las Vegas, for Appellant.

*Raymond E. Sutton,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, J.:

This appeal is from a judgment for respondent (plaintiff below) awarding him damages for breach of contract and directing that appellant hold certain funds in trust for respondent's benefit. We affirm that judgment.

Sigmund and Barbara Lichtblau, parents of appellant, were residents of Vienna, Austria. They were acrobats and performed in various parts of the world including the United States. They were also the uncle and aunt of respondent who was a member of their troupe for many years.

During their lifetime they acquired property in California as well as in Austria. Sigmund preceded Barbara in death. Barbara died testate in Austria in 1932 leaving property in both the United States and Austria.

By the terms of Barbara's will she left a legacy of $1,300, "free of fees and without deductions," payable out of her U.S.

property to respondent, her nephew; limited appellant, her son, to the "legal portion" of her estate under Austrian law; and named her two grandsons, children of appellant, her "main heirs" to share equally in residual property.

The nature, extent and disposition of her Austrian property is unclear from the record. Her property in the United States consisted of an interest in a bungalow and 12½ acres of unimproved real property in California. In the administration proceedings which were not commenced until 1938, the bungalow was appraised at $3,000 and the acreage at $300.

During probate the bungalow was sold for $3,500 with part of the price paid in cash and the balance by a promissory note for $2,630.33. During this same period the beneficiaries of Barbara's estate, by an agreement which will be further discussed in this opinion, assigned the assets of the estate to the two grandsons. The court approved this arrangement. In 1945 the two grandsons because they were entering the military service deeded the estate property to appellant, their father. In May, 1945 the court ordered distribution of the assets of the estate, consisting of the promissory note and the acreage to him.

While the estate was being administered it became apparent to the interested parties that if respondent insisted on receiving his legacy of $1,300, little if anything would be left for the grandsons. That circumstance brought about a loose arrangement that if respondent would forego payment of his legacy, the estate assets would be assigned to the grandsons; thereafter the property would be sold when advantageous and the proceeds would be divided among appellant, respondent and the grandsons in four parts. The payment on the promissory note from sale of the bungalow, after deducting expenses, was in fact handled in that manner and each of the four parties received approximately $400.

Appellant, having acquired title to the acreage in the manner described above, managed it for several years and engaged in a series of correspondence and personal discussions with respondent, his cousin, as to what development or disposition should be made of the land and reminded him of the equal liability of the four parties for taxes and improvements necessary to develop or sell the land.

In July, 1961 appellant sold the acreage for $31,625 and conveyed title to it. In September he wrote respondent and sent his personal check for $1,300 indicating the money was to satisfy respondent's legacy under his mother's will and that the money came from the sale of appellant's own home. He did not inform respondent he had sold the acreage, the price

received nor that he alone conveyed the title. Respondent wrote appellant indicating a hesitancy and unwillingness to take the money from him personally and that he would be willing to await sale of the land and his one-fourth share of the proceeds in satisfaction of his claim. Respondent through an independent inquiry acquired information about appellant's sale of the land, demanded his share of the proceeds and when refused brought this action.

The trial court ruled in favor of respondent. It found respondent agreed to forego payment from the estate of the $1,300 legacy; that appellant and respondent assigned their interest in the estate to the grandsons; that upon sale of the estate properties the proceeds would be divided equally among the four parties; that otherwise the grandsons would receive only nominal shares, if anything from their grandmother's estate. The court found the agreement to be supported in and corroborated by the evidence.

The lower court also found that title to the land in appellant alone when he sold it for $31,625; that he refused to pay over a one-quarter share to respondent and concluded that appellant violated the duty owed respondent with respect to his share of the proceeds of the sale of the California land. Judgment was entered in favor of respondent and against appellant for $7,918.75 less the sum of $1,300 paid to him, $700.31 taxes paid on the land by appellant, and imposed a trust upon the sale proceeds in favor of respondent to the extent of the money judgment.

Appellant assigns principally as error:

(1) The court misinterpreted the dealings of the parties in finding that an oral agreement had been reached.

(2) That in any event the oral contract involved an interest in land and was barred by the Statute of Frauds.

(3) That a constructive or resulting trust arose.

(4) Failure to join the grandsons as indispensable parties.

We think there is substantial evidence in the record to support the lower courts findings of fact. There is ample evidence of the agreement and consideration to support the contract. Harvey v. Streeter, 81 Nev. 177, 400 P.2d 761 (1965); Briggs v. Zamalloa, 83 Nev. 400, 432 P.2d 672 (1967).

Appellant contends that the agreement conveyed an interest in land and therefore was unenforceable due to non-compliance with the Statute of Frauds. We do not agree. The trial

court found that the agreement between the parties was "to the effect that both parties would assign their respective interests in the estate to the defendant's two sons; and upon the sale of the two estate properties, the proceeds would be divided equally between plaintiff, defendant, and defendant's two sons." Such an agreement, to share in the proceeds of a contemplated future sale, is not one creating an interest in land within the Statute of Frauds. Jones v. Patrick, 140 F. 403 (D. Nev. 1905); Dutton v. Interstate Inv. Corp., 119 P.2d 138 (Cal. 1941); Bailey v. Opp, 77 P.2d 826 (Ore. 1938); Davis v. Davis, 205 N.Y.S. 710 (1924); See also 3 Williston, Contracts § 493 (3d ed. 1960).

Appellant questions the propriety of the imposition of the constructive trust upon the proceeds of the sale. Recently this court stated: "A constructive trust will arise whenever the circumstances under which the property was acquired makes it inequitable that it should be retained by him who holds the legal title, as against another, provided some confidential relationship exists between the two and provided the raising of the trust is necessary to prevent a failure of justice." Schmidt v. Merriweather, 82 Nev. 372, 418 P.2d 991 (1966). Applying this statement of the law to the situation before us, we find that the action of the trial court was correct under the circumstances.

Finally the grandsons were not indispensable parties. Appellant in no way tried to cut down or reduce their share of the sales proceeds under the agreement. Nor did the lower court decide anything adversely to them. Sadler v. Sadler, 167 F.2d 1 (9th Cir. 1948). They may have been necessary parties but were not indispensable parties. Bank of Calif. Nat'l Ass'n v. Superior Court, 106 P.2d 879 (Cal. 1940).

We need not consider the rights of the parties under the will or Austrian law. The agreement concerned the entire rights of all parties in both parcels of property. The evidence shows and the lower court found their correspondence, conduct and dealings carried out that interpretation of the contract.

The judgment is affirmed with costs to respondent.

THOMPSON, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.