NEVADA BANK OF COMMERCE, A NEVADA BANKING CORPORATION, APPELLANT, v. ESQUIRE REAL ESTATE, INC., A NEVADA CORPORATION, M. J. SCHIFF, CALVIN C. MAGLEBY, AND BETTE MAGLEBY, RESPONDENTS.

No. 5861

April 15, 1970                    468 P.2d 22

*Hilbrecht, Jones & Schreck,* of Las Vegas, for Appellant.

*Magleby & Cahlan,* of Las Vegas, for Respondents Calvin C. and Bette Magleby.

*Parraguirre, Rose, Pico & Norwood,* of Las Vegas, for Respondents Esquire Real Estate, Inc., and M. J. Schiff.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a judgment of the lower court in favor of respondents relieving them of liability on a promissory note of which appellant was payee, Esquire Real Estate, Inc., was maker, and Calvin C. and Bette Magleby were guarantors. The judgment also awarded respondents $2,000 in counsel fees and their costs. We affirm the judgment.

On August 13, 1964, respondent Esquire Real Estate, Inc. (hereinafter referred to as Esquire), by and through Calvin C. Magleby and M. J. Schiff, officers of the corporation, executed a corporate promissory note in the sum of $42,761.60 payable to Nevada Bank of Commerce (hereinafter referred to as NBC) in one monthly installment of $1,781.80 and 23 monthly installments of $1,781.73, commencing September 17, 1964. This note had previously been secured by a guarantee executed by respondents Calvin C. and Bette Magleby dated May 8, 1964, guaranteeing all indebtedness owing appellant from respondent Esquire up to $75,000. The note was also secured by a chattel mortgage on all draperies and appliances located in certain apartments owned by respondent Esquire. These apartments were subject to a first deed of trust held by First Western Savings & Loan Association (hereinafter referred to as First Western).

Sometime prior to January 29, 1965, Esquire defaulted on the deed of trust held by First Western, who then took possession of the apartments. The third and last payment made by Esquire on the note to NBC was paid November 17, 1964. On January 29, 1965, a document entitled "Revision Agreement Installment Loan" was executed by Earl C. Gross, who signed for "Esquire Real Estate, First Western Savings and Loan

Association, Mortgagee in possession." This document purported to amend the note from Esquire to NBC. It provided for payment by one installment of $1,131.50 and 35 monthly installments of $1,131.36 beginning January 17, 1965. At this time the unpaid balance of the note was increased from $37,334.88 to $40,729.10. "Revision Charges" were listed as $6,212.91. Mr. Gross signed only for First Western. He had no authority to act for Esquire. The only reason appearing of record for the agreement between NBC and First Western was the assertion that First Western felt obligated to do so because of the appliances and draperies in the apartments upon which NBC had a chattel mortgage.

At the time of the agreement, no notice of default had been served upon Esquire, and it was not until after First Western failed to make the fourth payment that foreclosure proceedings were commenced. August 26, 1965, appellant's counsel sent a letter on his own letterhead to respondents herein, informing them that the property in the chattel mortgage would be sold in 10 days. NBC, on September 9, 1965, sold the appliances and draperies listed in the chattel mortgage for $27,000, which it applied to the note in question, and then commenced this action against respondents on their guarantee for a deficiency on the note in the amount of $6,183.69.

The lower court found that appellant and First Western entered an agreement whereby First Western agreed to pay Esquire's note for an increased principal sum, the repayment terms of which were different from those of the original note.

The issue presented for our review is whether the revision agreement between appellant and First Western constituted a novation discharging Esquire from all obligations on its promissory note and the Maglebys from obligation under their guarantee.

1.  In Williams v. Crusader Disc. Corp., 75 Nev. 67, 334 P.2d 843 (1959), this court held that the "substitution of a new obligation for an existing one effects a novation, which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation." 75 Nev. at 70. It is also clear that, absent consent to a novation, a guarantor is absolved of his liability, because the debt to which his obligation was collateral has been discharged. Id. at 70–71. See also Walker v. Shrake, 75 Nev. 241, 339 P.2d 124 (1959).

The creditor must assent to the substitution of the new

obligor in place of the original obligor, but, "[a]s in other contract cases, the creditor's assent to the substitution of a new obligor may be inferred from his conduct and other circumstances; his acceptance of a part performance by the third party, knowing that it is made with the understanding that a complete substitution (novation) is proposed, may be sufficient evidence of assent." 6 Corbin on Contracts § 1297, at 214–15.

2. The lower court could and obviously did conclude that the Revision Agreement was given by First Western and received by NBC in complete satisfaction of Esquire's debt. It further concluded the agreement constituted a novation discharging Calvin and Bette Magleby from their guarantee of Esquire's debt to appellant.

There was substantial evidence to support those findings and conclusions of the trial court, and they will be sustained on appeal. Briggs v. Zamalloa, 83 Nev. 400, 432 P.2d 672 (1967); Harvey v. Streeter, 81 Nev. 177, 400 P.2d 761 (1965); Close v. Redelius, 67 Nev. 158, 215 P.2d 659 (1950); Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747 (1944).

Judgment affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.