LAZOVICH AND LAZOVICH, INC., a Nevada Corporation, Appellant, v. GEORGE W. HARDING and JANEECE HARDING, His Wife, Respondents.

NEVADA NOVELTY, INC., a Nevada Corporation, Appellant, v. LAZOVICH AND LAZOVICH, INC., a Nevada Corporation, GEORGE W. HARDING and JANEECE HARDING, His Wife, Respondents.

No. 5925

June 8, 1970     470 P.2d 125

*Barry & Hall,* of Reno, for Lazovich and Lazovich, Inc.

*Echeverria & Osborne,* and *E. A. Hollingsworth,* for George W. Harding, et ux., and *Leo P. Bergin,* for Nevada Novelty.

# OPINION

By the Court, BATJER, J.:

Lazovich and Lazovich, Inc., hereinafter referred to as "Lazovich," was the owner of a liquor dispensing business known as the Red Fox Inn, located at 2155 Kietzke Lane, Reno, Nevada, on real property which they leased from Virgil H. Wedge, as trustee of the estate of William Hill.

On December 3, 1963, Lazovich and George W. Harding, his wife, Janeece Harding, and his brother, Ralph Harding, hereinafter referred to as "Harding," entered into a contract of sale whereby Lazovich sold to Harding all of its right, title and interest in and to the Red Fox Inn, together with all the stock, goods, wares, merchandise, equipment, present trade name and good will of said business for the total price of $40,000, to be paid at the rate of $300 per month, including interest at 6 percent per annum, after an initial down payment of $11,400. The first monthly payment was to be made on January 10, 1964. On December 20, 1963, Lazovich and the Nevada Novelty, Inc., hereinafter referred to as "Novelty," entered into an agreement in which Novelty guaranteed to Lazovich, in the event of default by Harding, the punctual payment, at the rate of $300 per month, of a sum not to exceed $15,000. This agreement between Lazovich and Novelty further provided that if Novelty was compelled to perform the guaranty, Novelty would then be granted a lien against the stock, goods, wares, merchandise and equipment granted to Lazovich by Harding, pursuant to the terms of the contract of sale dated December 3, 1963. The agreement between Lazovich and Novelty further provided that in the event Novelty was required to perform pursuant to their guaranty, Novelty would then have the right to continue the operation of the Red Fox Inn at its own risk or loss or gain without making any further payments to Lazovich, other than the monthly payments of $300, up to a total of $15,000. That agreement further provided that in the event Novelty was compelled to perform under the guaranty and eventually sold the Red Fox Inn, that Lazovich and Novelty would share equally in the net proceeds of sale after deducting from the gross sale price all expenses paid by Novelty, including all cost required to be paid

by it in assuming the operation of the business or lease as well as any moneys paid to Lazovich or required by the guaranty agreement.

On December 3, 1963, George W. Harding and Ralph Harding leased the Red Fox Inn premises from Virgil Wedge, Trustee of the Estate of William Hill, for a period of seven years commencing on the 15th day of December 1963. This lease contained an agreement between the lessor and Novelty that in the event of a default of payment by the Hardings, the lease would by the terms of the latter agreement, be assigned to Novelty. An assignment of the lease from the Hardings to Novelty, together with the consent to assignment by the lessor and an assumption of lease by Novelty were also executed on December 3, 1963, and made part of the lease agreement. Except to the extent that this lease is mentioned in the guaranty agreement between Lazovich and Novelty, it is not involved in this lawsuit.

Harding made payments pursuant to the contract of sale up until July 1965, at which time they stopped making the payments, turned the keys over to Novelty and vacated the premises.

On September 1, 1967, Lazovich brought suit against Harding for breach of the December 3, 1963 agreement, and against Novelty for breach of the December 20, 1963 agreement. In their answer Harding alleged the affirmative defenses of laches, consent and ratification, waiver, and failure of consideration, and also filed a cross-claim alleging that the December 3, 1963 agreement had been superseded by the agreement between Lazovich and Novelty dated December 20, 1963. Harding specifically alleged that on or about December 20, 1963, they executed an assignment of their contract of sale dated December 3, 1963 to Novelty, and in its answer to the cross-claim Novelty admitted being the assignee.

At the bench trial it was revealed that Novelty executed the guaranty agreement with Lazovich on December 20, 1963, with the understanding that it would be able to keep some slot machines and other coin operated machines on the premises during Harding's occupancy, and that thereafter while the Hardings were in occupancy Novelty did keep slot machines and other coin operated machines on the premises. It was further revealed that after July 1965, Novelty procured other operators for the premises and that at least $2,700 was paid by those operators to Lazovich. At trial Novelty disavowed credit for these payments and insisted that they were made for the benefit of Harding.

At the conclusion of the trial the presiding judge found that the guaranty agreement between Lazovich and Novelty superseded the original contract of sale between Lazovich and Harding, and awarded Lazovich a judgment in the amount of $15,254.25, together with interest thereon at the rate of seven (7%) percent per annum from the 15th of April, 1969, until paid, plus costs in the amount of $152.25, and rejected Lazovich's claim against Harding; Novelty's claim against Harding, and Harding's cross-claim against Novelty. This appeal is taken from that judgment.

We find the guaranty agreement between Lazovich and Novelty to be a true novation and that it did supersede the original contract of sale between Lazovich and Harding, and that Harding was thereby completely discharged from any liability under the contract of sale, and also absolved of any liability to Novelty.

Although Harding did not specifically plead novation as an affirmative defense, they did plead a cross-claim, and we shall treat the pleading as if it had been a proper designation. NRCP 8(c).

All novations are substituted contracts, and the converse is also true that all substituted contracts are novations. An existing claim can be instantly discharged by the substitution of a new executory agreement in its place. This is true whether the prior claim is not yet matured at the time of the substitution, or is a claim to reparation for some prior breach of duty. 6 Corbin on Contracts, § 147 (1951). In Williams v. Crusader Disc. Corp., 75 Nev. 67, 334 P.2d 843 (1959), this court held that: "This substitution of a new obligation for an existing one effects a novation, which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation." Nevada Bank of Commerce v. Esquire Real Estate, Inc., 86 Nev. 238, 468 P.2d 22 (1970).

Although they speak in terms of a guarantee, the agreement between Lazovich and Novelty is simply a substituted agreement whose effective date was contingent only upon Harding's default. When the guarantee and guarantor agree to split the net proceeds from a subsequent sale of the business, as in this case, to the complete exclusion of the original purchaser, that substitute agreement is indeed a novation.

In Mayfair Farms Hold. Corp. v. Kruvant Enterprises Co., 166 A.2d 585 (N.J. Super. 1960), that court held: "An intention to discharge the former debtor in the course of the novation need not be shown by express words to that effect but may be implied from the facts and circumstances.

"Both reason and sound authority support the concept that assent by the original debtor to his discharge is not a requisite of novation. A debtor can be discharged without his knowledge or consent. In a novation where the creditor discharges the original debtor, the latter is the donee beneficiary of the transaction."

Although Novelty disavowed the benefit of payments in the total amount of $2,700, made to Lazovich after July 1965, we find, as a matter of law, that Novelty's liability under the December 20, 1963 agreement must be credited with those payments.

In the opening brief, Novelty contends that at the time of trial only $8,400 was due and owing to Lazovich, and that was the greatest amount that could have been awarded against Novelty. We do not disagree with this contention, but on the basis of the record Novelty's figures are wrong. When judgment was entered on April 16, 1969, it was impossible for Novelty to owe Lazovich $15,254.25. According to the terms of the Lazovich-Novelty agreement, Novelty's liability did not commence until the Harding default. Harding made their last payment on July 22, 1965. The next payment was not due until August 10, 1965. It appears to us that from and including August 10, 1965, to and including December 31, 1968 (the date on which the trial was concluded) there was owing from Novelty to Lazovich $12,210 less the $2,700 credit resulting in a balance due of $9,510, instead of $15,254.25.

Accordingly we affirm the judgment of the district court in all respects, save the granting of $15,254.25 to Lazovich; this award must be reduced to $9,510.

The evidence adduced at trial taken together with the clear meaning of the contract of sale between Lazovich and Novelty is more than sufficient to support the findings of fact and conclusions of law of the trial court, and we sustain them on this appeal. Briggs v. Zamalloa, 83 Nev. 400, 432 P.2d 672 (1967); Harvey v. Streeter, 81 Nev. 177, 400 P.2d 761 (1965); Close v. Redelius, 67 Nev. 158, 215 P.2d 659 (1950); Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747 (1944).

Nothing in this opinion is to be construed as precluding Lazovich from recovering the balance of Novelty's guaranty,

to the limit of $15,000, under the December 20, 1963 agreement, if and when it becomes due.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.