533 F.2d 486
 MGM GRAND HOTEL, INC., a Nevada Corporation, Plaintiff-Appellant,
v.
IMPERIAL GLASS CO., a co-partnership consisting of Gordon
Ross and I. M. Zerman, co-partners, and United
Pacific Insurance Company, a Washington
Corporation, Defendants-Appellees.
Gordon ROSS and I. M. Zerman, co-partners doing business as
Imperial Glass Company, a co-partnership,
Third-Party Plaintiffs,
v.
TAYLOR CONSTRUCTION COMPANY, a Nevada Corporation, et al.,
Third-Party Defendants.
 No. 75-1274.
 United States Court of Appeals,
Ninth Circuit.
 March 31, 1976.
Rehearing Denied May 21, 1976.
 
 Frank Rothman (argued), of Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., for petitioner.
 Peter M. Appleton (argued), of Tyre & Kamins, Los Angeles, Cal., for respondents.
 OPINION
 Before KOELSCH and ELY, Circuit Judges, and JAMESON, District Judge.*
 ELY, Circuit Judge:
 
 
 1
 This is a diversity action brought by MGM Grand Hotel, Incorporated (MGM), a Nevada corporation, for breach of contract against Imperial Glass Company (Imperial) a co-partnership consisting of persons who are citizens of California, and Imperial's surety, United Pacific Insurance Company (United), a Washington corporation.
 
 
 2
 MGM appeals from an order granting summary judgment in favor of Imperial and United. MGM Grand Hotel, Inc. v. Imperial Glass Co., 65 F.R.D. 624 (D.Nev.1974). We reverse.
 
 
 3
 MGM entered into an agreement with Taylor Construction Company (Taylor), third-party defendant below, by which Taylor agreed to become MGM's " managing contractor" with responsibility for overseeing construction of the MGM Grand Hotel in Las Vegas, Nevada. Because of the massive costs of the project,[1] Taylor was unable to undertake the financial responsibility normally assumed by general contractors. Therefore, the traditional functions of a general contractor were split. Taylor assumed responsibility for supervision of construction,[2] while MGM assumed all financial responsibility for the project.
 
 
 4
 On June 19, 1972, MGM and Taylor entered into a contract with Imperial by which Imperial was to furnish and install curtainwall for the hotel at a contract price of $2,920,000. On April 20, 1973, MGM filed a complaint against Imperial in the District Court, alleging a failure to render substantial performance on the contract. Imperial filed a Motion for Summary Judgment, alleging that MGM was not entitled to bring the action because it was not a "duly licensed contractor" within the terms of Nevada Revised Statutes § 624.320.[3] The statute provides:
 
 
 5
 "No person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, engaged in the business of[4] acting in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid."
 
 
 6
 MGM concedes that it is not a licensed contractor; however, it contends that the statute has been satisfied by the undisputed fact that Taylor is a licensed contractor. We agree.
 
 
 7
 In reviewing an order granting a motion for summary judgment there are two necessary inquiries: "First, is there any genuine issue as to any material fact? Second, if there is no genuine issue of fact, then, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law." Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir. 1975). Although the record indicates to us that there were genuine unresolved issues of material fact, we need not now make that decision. We conclude that Imperial is not, as a matter of law, entitled to prevail.
 
 
 8
 In reaching that conclusion, we resolve only the issue as to whether, viewing the evidence in a light most favorable to the non-moving party, MGM is barred by NRS § 624.320 from bringing suit for breach of contract solely because it is not a licensed contractor. The Nevada Supreme Court has never confronted the problem.[5] Indeed, we are aware of only a handful of cases construing any aspect of NRS § 624.320.[6] Thus, we attempt to determine from all available data the manner in which the Nevada Supreme Court would interpret NRS § 624.320 if confronted with the precise issue here presented. See C. Wright, Handbook of the Law of Federal Court § 58 at 239-40 (2d ed. 1970). Cf. Yost v. Morrow, 262 F.2d 826, 828 n.3 (9th Cir. 1959).
 
 
 9
 Our conclusion that MGM is not barred by NRS § 624.320 from instituting its suit is based upon two independent reasons. First, it would not further the purposes of the statute to require both the "owner" and the "managing contractor" in an arrangement such as that between MGM and Taylor to obtain contractor's licenses. The primary purpose of Nevada's licensing statutes is to protect the public against both faulty construction and financial irresponsibility.[7] In determining whether this purpose would be implemented by barring MGM from bringing suit against Imperial we are aided, to some extent, by the decision of the Nevada Supreme Court in Nevada Equities, Inc. v. Willard Pease Drilling Co., 84 Nev. 300, 440 P.2d 122 (1968).
 
 
 10
 In Nevada Equities the court declined to bar a contractor under NRS § 624.320 from bringing suit to recover compensation for services rendered because there was no ascertainable public policy for doing so. Although the contractor had failed to comply with one of the technical licensing requirements of the State Contractor's Board, the court held that the contractor had "substantially complied" with Nevada's licensing scheme, reasoning that there was no suggestion that the contractor was wanting or lacking "in any particular detrimental to the safety and protection of the public." 84 Nev. at 303, 440 P.2d at 123. Thus, in order to avoid the harsh result apparently indicated by NRS § 624.320, the Nevada Supreme Court looked to the realities of the contractor's financial status and engineering competence to determine whether the public was adequately protected.
 
 
 11
 Similarly, the arrangement between MGM and Taylor substantially complied with the Nevada licensing scheme.[8] To the extent that licensing protects the public against faulty construction, the public was adequately protected by the fact that Taylor, who had total responsibility for supervising construction of the hotel, was a licensed contractor.[9] The issue, then, is whether financial control alone is enough to bar MGM from bringing suit solely because it is not a licensed contractor. Looking to the realities of MGM's financial status, there is absolutely no suggestion in the record that MGM is financially irresponsible.[10] Indeed, it was to exploit the strong financial position of MGM's parent corporation that the managing contractor arrangement was adopted by MGM. Moreover, because MGM is operating hand in hand with a licensed contractor, the Nevada Contractors' Board is in a position to monitor the progress of construction should there arise any doubt about the financial stability of the project. Thus, a policy of protecting the public would in no way be furthered by imposing upon MGM such a harsh penalty as barring it from bringing its suit.
 
 
 12
 Our second reason for holding that MGM is not barred by NRS § 624.320 is that the statute, by its terms, only applies to suits "for the collection of compensation for the performance of any act or contract." Hence, the present action cannot be barred because MGM seeks damages for failure of performance rather than compensation for services rendered.
 
 
 13
 Although we are aware that some other states have construed similar statutes to bar damage actions for breach of contract,[11] the Nevada Supreme Court has never decided the issue, and we are unwilling to assume that it would adopt a position so obviously contrary to the explicit, literal language of the statute.[12]
 
 
 14
 NRS § 624.320 works a forfeiture, a drastic penalty, and the Nevada Supreme Court has unequivocally remarked that it will not condone such a forfeiture in the absence of some sound public policy requiring that it should do so. Nevada Equities, supra, 84 Nev. at 303, 440 P.2d at 123. To uphold the forfeiture applied against MGM would necessitate our construing the statute more broadly than its language fairly permits. We decline to do this, especially since we can see no overriding public policy compelling us to do so. Thus, even if we were to find that MGM is a "contractor" within the meaning of NRS § 624.320, we would not hold that the statute prohibited MGM's institution of the suit.
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable William J. Jameson, Senior United States District Judge, Billings, Montana, sitting by designation
 
 
 [1]
 The estimated cost of constructing the hotel was $100,000,000
 
 
 [2]
 Appellee disputes the level of supervision exercised by MGM; however, in reviewing a summary judgment, we are obliged to view the evidence in the light most favorable to MGM as the non-moving party. See Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir. 1975)
 Applying this standard, the record reveals that Taylor was wholly responsible for day-to-day supervision of construction. In addition, Taylor selected the subcontractors with whom it wished to deal, prepared bid specifications, and conducted contract negotiations with prospective subcontractors. It was Taylor that supervised, scheduled, and coordinated all work on the job, and it was Taylor that issued purchase orders for the job, resolved problems that arose on the jobsite, and approved all work and materials provided in the construction of the hotel. MGM's involvement, on the other hand, was limited to the activities of its Chairman of the Board, who performed the duties normally attributed to an owner, plus the operation of a one-man office to disburse money in accordance with MGM's obligation to assume financial responsibility for the project.
 
 
 [3]
 In the court below a choice of law issue was raised. The District Court held that Nevada law should be applied, and the appellant does not here challenge that ruling
 
 
 [4]
 Appellees dispute the presence of the word "of" in NRS § 624.320, asserting that it is a clerical error inadvertently substituted for the proper word, "or". Since we conclude that the outcome would be the same in the present context regardless of which word is used, we need not now decide which word was intended by the Nevada Legislature
 
 
 [5]
 Since the District Court's decision in the present case a Nevada trial court has had occasion to examine the same issue. Las Vegas International Hotel, Inc. v. Argonaut Ins. Co., No. A 93354 (8th Jud.Dist.Ct.Nev., May 28, 1975). The court held that NRS § 624.320 was not applicable to managing contractor arrangements, criticising the District Court that entered summary judgment in the present case for ruling to the contrary. See note 9 infra
 While we are not bound by the Nevada trial court's unpublished opinion (see King v. Order of Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948)), we do regard it as persuasive authority in support of the conclusions we reach herein.
 
 
 [6]
 See Walker Bank & Trust Co. v. Smith, 88 Nev. 502, 501 P.2d 639 (1972); Nevada Equities, Inc. v. Willard Pease Drilling Co., 84 Nev. 300, 440 P.2d 122 (1968); Briggs v. Zamalloa, 83 Nev. 400, 432 P.2d 672 (1967); Magill v. Lewis, 74 Nev. 381, 333 P.2d 717 (1958); Milum v. Herz Bros. Water Well Drilling & Supply Co., 74 Nev. 309, 329 P.2d 1068 (1958); Waite v. Burgess, 69 Nev. 312, 250 P.2d 919 (1952)
 
 
 [7]
 See NRS § 624.260(1), which sets the standards for licenses
 "The board shall require an applicant to show such a degree of experience, financial responsibility and such general knowledge of the building, safety, health and lien laws of the State of Nevada and the rudimentary principles of the contracting business as the board shall deem necessary for the safety and protection of the public."
 See also Nevada Equities, Inc. v. Willard Pease Drilling Co., 84 Nev. 300, 303, 440 P.2d 122, 123 (1968).
 
 
 [8]
 During oral argument, we were told that the Nevada Legislature had very recently amended chapter 624 so as to exempt managing contractor arrangements from the purview of the licensing statutes
 
 
 [9]
 A Nevada trial court of general jurisdiction, in criticizing the District Court's ruling in the present case, suggested that to bar MGM from bringing suit would operate to deprive the public of some of the protection the licensing statutes, NRS ch. 624, were designed to afford
 "That the statutory scheme of NRS Chapter 624 was designed to protect the public goes without question, but the prohibition laid down in MGM can hardly be said to be in the interest of the public. MGM sanctions the anomalous situation of relegating an owner to a position where it cannot protect the public from the shoddy workmanship of its subcontractors if it cannot enforce the latter's bond which has been given to secure such a lack of solicitude."
 Las Vegas International Hotel, Inc. v. Argonaut Ins. Co., No. A 93354 (8th Jud.Dist.Ct.Nev., May 28, 1975).
 
 
 [10]
 MGM established a trust fund of $50,000,000 to finance construction of the hotel. This amount is far in excess of the $20,000 surety bond that may be required by the State Contractors' Board as a prerequisite to obtaining a contractor's license. See NRS § 624.270(4)
 
 
 [11]
 See, e. g., General Ins. Co. of America v. St. Paul Fire and Marine Ins. Co., 38 Cal.App.3d 760, 113 Cal.Rptr. 613 (1974); Proffitt & Durnell Plumbing, Inc. v. David H. Baer Co., 247 Cal.App.2d 518, 55 Cal.Rptr. 764 (1966); Fleming v. Phelps-Dodge Corp., 83 N.M. 715, 496 P.2d 1111 (1972)
 
 
 [12]
 See Las Vegas International Hotel, Inc. v. Argonaut Ins. Co., No. A 93354 (8th Jud.Dist.Ct.Nev., May 28, 1975). Cf. Milum v. Herz Bros. Water Well Drilling & Supply Co., 74 Nev. 309, 312, 329 P.2d 1068, 1069 (1958) (rejecting the theory that an unlicensed contractor was barred by NRS § 624.320 from defending an action because "(s)uch construction would do violence to the plain meaning of the act."), cited with approval in Walker Bank & Trust Co. v. Smith, 88 Nev. 502, 501 P.2d 639 (1972)