[No. 2392]

## GEORGE F. KING, APPELLANT, v. D. P. RANDALL, A. J. LOFTUS, BERT BARONI, W. B. SAYERS, AND BYRON GATES, RESPONDENTS.

[190 Pac. 979]

1. INDEMNITY—CONTRACT CREATING SITUATION PREVENTING REMOVING OF COUNTY-SEAT HELD CONTRARY TO PUBLIC POLICY.

Where building contractor had ceased work on a county courthouse because of a dispute as to the legality of his contract to rebuild it and threats to bring injunction proceedings against him, and where there was a movement on foot to remove county-seat to other town, a contract by certain residents of the county-seat to reimburse the contractor for any loss he should sustain in his further prosecution of the work in consideration of his proceeding therewith, entered into in order to procure rebuilding of courthouse before removal of county-seat, and thus create a situation which would influence public sentiment against the change, *held* unenforceable as contrary to public policy.

2. EVIDENCE—COURT WILL TAKE JUDICIAL NOTICE OF REMOVAL OF COUNTY-SEAT BY LEGISLATURE.

The court will take judicial notice of the fact that the county-seat was removed by the legislature.

3. CONTRACTS—CONTRACTS OPERATING TO PUBLIC DETRIMENT VOID.

All contracts the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, regardless of whether in a particular case the purpose of the contract is effectuated.

APPEAL from Eighth Judicial District Court, Lyon County; *T. C. Hart,* Judge.

Action by George F. King against D. P. Randall and others. Judgment for defendants, and plaintiff appeals. **Affirmed.**

*E. E. Hull,* for Appellant:

The lower court fell into the error of considering the indemnity contract as being founded upon and dependent for its validity upon the contract for rebuilding the courthouse which was entered into between the county commissioners and plaintiff. The contract to indemnify against loss did not contemplate that the building contract was illegal, nor did the parties concerned believe it to be illegal. A contract guaranteeing performance of a contract stands or falls with that contract, in so far as its legality is concerned; a contract of indemnity is an independent contract, and does not depend for its validity upon any other contract. "A contract of indemnity is generally held to be an original one, and not within the statute." Elliott on Contracts, vol. 2, sec. 1245. "It is generally sufficient if the act is not clearly illegal, but is supposed to be legal and performed under claim of right." Idem, vol. 5, sec. 3998; 22 Cyc. 79, 83.

In order to hold that the contract between respondents and appellant was invalid, it is first necessary to declare that the performance of any work upon the courthouse building by appellant was in itself unlawful. "Contracts of indemnity or guaranty are not against public policy where the act contemplated is not illegal." 13 C. J. 429.

*Platt & Sanford,* for Respondents:

This action was founded upon a contract that was unlawful, against public policy, and wholly void. The order of the lower court sustaining the demurrer should therefore be affirmed.

Contracts growing out of or connected with an illegal

contract are illegal and void, and will not be enforced in a court of law or equity. 13 C. J. 509; Buck v. Colbath, 18 L. Ed. 255, 257. The instant contract is a manifest interference with the administration of government, is against public policy and void, and should not be enforced. "It is therefore a principle of the common law that it will not lend its aid to enforce a contract to do an act which tends to corrupt or contaminate, by improper and insinuating influences, the integrity of our social or political institutions." 13 C. J. 429. "When the general public is interested in the location of a public office, a contract to influence its location at a particular place for individual benefit or personal gain is against public policy." 13 C. J. 437; Buffendeau v. Brooks & Valentine, 28 Cal. 641; Colburn v. Board, 61 Pac. 241; Walsh v. Hibbard, 50 L. R. A. 396; Roller v. Murray, 107 Va. 527.

Not only was the illegal contract pleaded by plaintiff, but it was the real, true, and only consideration for the contract sued upon. "An illegal contract cannot, as between the immediate parties, be the source of a legal right." W. U. T. Co. v. Yopst, 3 L. R. A. 224, 227; Roby v. West, 4 N. H. 287; Pike v. King, 16 Iowa, 49; Scott v. Duffy, 14 Pa. 18; Holt v. Green, 72 Pac. 13.; Phalen v. Clark, 19 Conn. 421; Gregg v. Wynn, 4 Cush. 322. "No rule of law is better settled than that, if a party claiming the right to recover a debt is obliged to trace his debt through an illegal contract, he cannot recover." DeWitt v. Lander, 72 Wis. 120.

By the Court, COLEMAN, C. J.:

Appellant, who was plaintiff in the district court, brought this action to recover upon the following contract:

"Memorandum of Agreement

"Whereas, The county commissioners of Lyon County, Nevada, have entered into a contract in writing with one George F. King under the terms of which said King

is to rebuild the county courthouse at Dayton, in said county; and

"Whereas, There is some dispute as to the legality of proceeding under said contract, and a suit and injunction are threatened by certain residents of said county to tie up the said work:

"Now, therefore, we, the undersigned residents and taxpayers of Lyon County, Nevada, and each of us, in consideration that said King will proceed to order the material necessary and employ the laborers and go forward with the construction of said courthouse, do hereby promise and agree and bind ourselves jointly and severally to save said King harmless from any and all illegality of said contract, and to repay to him any and all sums he may pay or become liable for in connection with the rebuilding of said courthouse, in case the said contract, or the manner in which it was let, should be held illegal, and in case the county officials shall be prevented by law or otherwise from paying to said King the contract price of said building or any part thereof.

"In consideration of the foregoing, said King hereby agrees and binds himself to go forward with the reconstruction of said building in all respects as required in said contract until such time as he may be prevented from doing so by an order of court.

"Dated Dayton, Nevada, March 14, 1910.

"D. P. Randall, A. J. Loftus, Bert Baroni, W. B. Sayers, Byron Gates—Residents and Taxpayers. Geo. F. King, Contractor."

The complaint alleges that upon the 26th day of July, 1910, the plaintiff entered into an agreement with the board of county commissioners of Lyon County, Nevada, whereby it was agreed that in consideration of the stated compensation he was to furnish the necessary material and do the labor for the rebuilding of the county courthouse of said county at Dayton, the county-seat thereof; that at and prior to the 14th day of

March, 1910, certain residents and taxpayers of said county claimed, and were then claiming, that the contract for the rebuilding of said courthouse was invalid, and had threatened and were threatening to commence an action in the district court of said county to enjoin the further prosecution of the work and to prevent the payment to plaintiff out of the funds of said county of any moneys for work and labor performed and materials furnished by plaintiff in the prosecution of the work of rebuilding said courthouse.

It is further averred that, because of said claim of said residents and taxpayers, and said threatened action, and the possibility that plaintiff might not be able to collect the moneys due for said work and materials so furnished, on March 14, 1910, he desired to and was about to cease work upon said courthouse and delay the ordering of labor and material therefor and that defendants (respondents), and each of them, were desirous, and considered it to be for their benefit and welfare, that the work of rebuilding said courthouse should be continued and diligently prosecuted until completed. It is also alleged:

"That at said times last herein mentioned an effort was being made by certain residents of said county to have the county-seat of said Lyon County changed from said town of Dayton to the city of Yerington, in said county, and it was considered by said defendants and by each of them that said change was in immediate danger of being made, but that, if the rebuilding of said courthouse was completed before the removal of said county-seat could be brought to an issue, the effort to change said county-seat would fail; that the defendants were then residents and taxpayers and the owners of real and other property within said town of Dayton, and would be damaged by the removal of said county-seat from said town of Dayton, and did not desire that such change should be made."

It is further alleged that, in order to induce plaintiff

to continue the work of rebuilding said courthouse, the defendants executed, acknowledged, and delivered to plaintiff the written agreement above set out, and that, in reliance upon said writing, he did order material and employ labor and continue with the work; that on March 16, 1910, an action was commenced in the district court of said county to restrain the plaintiff from proceeding with the work and to restrain the officers of said county from paying to plaintiff out of the county funds any sum or sums on account thereof, and that a temporary restraining order as prayed was issued, which upon final hearing was made permanent.

It is further alleged that, relying upon the contract, plaintiff incurred certain obligations, because of which the defendants became indebted to the plaintiff in the sum of $2,199.45, which, though often demanded, the defendants have refused to pay.

To this complaint a general demurrer was filed, and, upon its being sustained, plaintiff not electing to amend, judgment was entered in favor of the defendants, from which this appeal is taken.

In sustaining the demurrer the lower court held that the contract sued upon was contrary to public policy. It is conceded by appellant that any contract which is against public policy is void. The only question is: Is the contract one which is contrary to public policy?

1. What was the purpose of the contract? Of this there can be no doubt. Its clear purpose was, by procuring the rebuilding of the courthouse, to create a situation which would so influence the public sentiment of the county that it in turn would make itself felt in such a way as to result in the retaining of the county-seat of Lyon County at Dayton, notwithstanding the fact that the public interest might demand its removal to Yerington. That such a contract is contrary to public policy, we do not question. The general rule sustaining this view is thus stated in 13 C. J. 437:

"When the general public is interested in the location

of a public office, a contract to influence its location at a particular place for individual benefit or personal gain is against public policy."

The same doctrine is asserted in 6 R. C. L. p. 747, sec. 152, as follows:

"Moreover, it has been said that any contract made for the purpose of securing the location of a public office, such as a postoffice, in any certain part of the city or elsewhere, or which prevents, or tends to prevent, the change or removal of such office, when the necessities of business or the interest of the public demand such change or removal, is opposed to public policy, and void, as tending to the injury of the public service, and as subordinating the public welfare to individual convenience or gain."

The Supreme Court of Indiana, in the case of Elkhart Lodge v. Crary, 98 Ind. 238, 49 Am. Rep. 746, in considering the validity of a contract to procure the locating of the postoffice on a certain lot, said:

"There are many phases of injury to the public service, and we do not deem it necessary to examine the cases upon the subject; for we think it quite clear that a contract which is made for the purpose of securing the location of an important office connected with the public service for individual benefit, rather than for the public good, tends to the injury of the public service. The case made by the evidence falls fully within the principle that contracts which tend to improperly influence those engaged in the public service, or which tend to subordinate the public welfare to individual gain, are not enforceable in any court of justice. Pollock, Prin. of Cont. 279; Anson, Cont. 175; 1 Whart. Cont. secs. 402 to 414, inclusive. A wholesome rule of law is that parties should not be permitted to make contracts which are likely to set private interests in opposition to public duty or to the public welfare. * * *

"It is not necessary that actual fraud should be shown; for a contract which tends to the injury of the public service is void, although the parties entered into it

honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit. An English author says: 'But an agreement which has an apparent tendency that way, though an intention to use unlawful means be not admitted, or even be nominally disclaimed, will equally be held void.' Pollock, Prin. of Cont. 286. In the case of Tool Co. v. Norris, 2 Wall. 45, the court said: 'All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question, whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country.' "

In Fuller v. Dame, 18 Pick.(Mass.) 472, wherein the validity of a contract and note was in question, the consideration of which was the procuring of the establishment of a railroad depot near the property of the defendant Dame in Boston, the court, speaking through Chief Justice Shaw, held the contract and note void, as without consideration and against public policy. The court, speaking of the establishing of the depot and of the consequence of such a contract as was sued on, used the following language:

"It is also true that it was left to the corporation and the directors to fix the termination and place of deposit. In doing this a confidence was reposed in them, acting as agents for the public, a confidence which, it seems,

could be safely so reposed, when it is considered that the interests of the corporation as a company of passenger and freight carriers for profit was identical with the interests of those who were to be carried, and had goods to be carried—that is, with the public interest. This confidence, however, could only be safely so reposed under the belief that all the directors and members of the company should exercise their best and their unbiased judgment upon the question of such fitness, without being influenced by distinct and extraneous interests, having no connection with the accommodation of the public or the interests of the company. Any attempt, therefore, to create and bring into efficient operation such undue influence has all the injurious effects of a fraud upon the public, by causing a question which ought to be decided with a sole and single regard to public interests to be affected and controlled by considerations having no regard to such interests."

In Woodman v. Innes, 47 Kan. 26, 27 Pac. 125, 27 Am. St. Rep. 274, the court, in speaking of a contract to influence the locating of a postoffice, said:

"Any contract which is made for the purpose of securing the location of such an office, or which prevents, or tends to prevent, the change or removal of such an office,· when the necessities of business or the interest of the public demand a change or removal, tends to the injury of the public service, and therefore is against public policy. Such contracts as referred to in the petition tend to improperly influence those engaged in the public service, and also tend to subordinate the public welfare to individual convenience or gain. Parties should not be permitted to make contracts which induce personal or private interest to overbear public duty or public welfare."

In a note to Edwards v. Goldsboro, 4 L. R. A. (N.S.) 589, 590, the editor tersely states the rule as follows:

"Every court in the land would doubtless assent to the proposition that any contract, made chiefly in contemplation of private advantage, for the purpose of securing

the location of a building in which the public has an interest, or for the purpose of preventing its removal when the necessities of business or the public interest demand it, tends to the injury of the public service, and is therefore void; that the tendency of these contracts is improperly to influence public servants, and to subordinate the public welfare to private gain, and that even the making of them should be prohibited where they induce individual interest to overbear the public welfare. The principle of public policy itself is not troublesome in this connection, except in the application of it."

In Davis v. Janeway, 55 Okl. 725, 155 Pac. 241, L. R. A. 1916D, 722, the decisions are reviewed at considerable length, and some apparently conflicting ones distinguished.

2, 3. The rule is so well established, and founded upon such a wholesome theory, that any contract entered into for personal gain, as was the one in question by defendants, for the purpose of creating a situation with the sole purpose of preventing the removal of the county-seat of the county, regardless of the public interest, is contrary to public policy, that we see no escape from adopting that view. It is not a question as to the success of the scheme which we must look to, for we will take judicial notice of the fact that the county-seat was removed by the legislature at its succeeding session, but purely one of the general tendency of such contracts. The courts cannot draw the line and say that up to a certain point a contract which is made to influence the creation of a situation repugnant to the interest of the public is not against public policy, and hence is valid, but beyond that point it is void; and therefore it must be asserted that all contracts the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in a particular case the purpose of the contract is effectuated. Nor can we consider the moral obligation resting upon the defendants to comply with their contract. That is a plea

which must be made to their sense of integrity and standing as men who have regard for their pledged word in the community in which they live.

For the reasons given the judgment is affirmed.