## Burchell v. Ledford.

(Decided November 2, 1928.)

Appeal from Clay Circuit Court.

Contracts.—Contract between two unsuccessful candidates at election, whereby defendant agreed to appoint plaintiff deputy sheriff and to pay plaintiff's expenses incurred in election contest suit that had been instituted by him, if plaintiff would testify for defendant, and furnish evidence in defendant's contest suit, provided defendant was successful in contest, held contrary to public policy and void, and plaintiff could not recover for breach of contract.

ROY W. HOUSE for appellant.

MURRAY L. BROWN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, who was the plaintiff below, brought this action to recover damages in the sum of $3,521.78 for the alleged breach of a contract by the defendant, Ledford.

A demurrer was sustained to the amended petition, which had been filed after a demurrer to the original

petition had been sustained, and, the plaintiff having refused to plead further, judgment was rendered dismissing the petition as amended, and from that judgment plaintiff prosecutes this appeal.

The petition as amended alleges, in substance, that at the November election in 1925, the plaintiff, the defendant, and one Millard Hubbard were candidates for sheriff of Clay county; plaintiff being the Democratic candidate, defendant the Republican candidate, and Hubbard the Independent candidate. The certificate of election was issued to Hubbard, and both Burchell and Ledford contested the election. Ledford, in his petition contesting the election of Hubbard, charged that Hubbard's name was not properly printed on the ballot as an Independent candidate. Before any evidence was taken, the defendant learned that plaintiff had in his possession written evidence which would invalidate the nominating petition of Hubbard, and plaintiff and defendant entered into a contract by the terms of which the plaintiff agreed to turn over to the defendant all written and other evidence which he had in his possession or might thereafter acquire concerning the nominating petition of Hubbard, and that the defendant agreed, in the event of his ultimate success in the contest, to pay to the plaintiff all legitimate expenses which plaintiff might incur in the contest suit that had been instituted by him, and to make the plaintiff chief deputy in the office at a good salary. The plaintiff further alleged in his petition:

"That he lived up to his part of said contract, and violated no part thereof, and did furnish the defendant all the information of evidence, both written and otherwise, which he then had and possessed, as well as all other information of evidence which he afterwards acquired concerning the invalidity of said nominating petition of said Hubbard, and which was sufficient to, and which did cause the defendant to ultimately win said suit, March 25th, 1927, and by which the defendant acquired and now holds the office of sheriff of this county, under and by virtue of said contract, and the information furnished him by this plaintiff as aforesaid, but he avers that defendant has violated and broken the covenants of said contract, in that he had failed and refused to pay this plaintiff's

legal and legitimate expenses incurred in said contest suit, and which expenses plaintiff avers amounts to the full sum of $1,721.78. . . . that the defendant has further violated and broke the covenants of said contract, in that, he has failed and refused to make this plaintiff, chief, or any deputy, in said office, and which deputyship would have been reasonably worth in salary, above the expenses of same, the sum of eighteen hundred dollars, $1,800.00, for one year.''

The alleged agreement is one to pay a witness more than the regular witness' fees to induce him to testify as to facts within his knowledge, and the sole question for determination is whether or not such an agreement is contrary to public policy, and void.

A contract to pay a witness for testifying, coupled with the condition that the right of the witness to compensation depends upon the result of the suit in which his testimony is to be used, is contrary to public policy, and void, for the reason that it is the tendency of such a contract to lead to perjury and the perversion of justice. Clifford v. Hughes, 139 App. Div. 730, 124 N. Y. S. 478; State v. Nickerson, 114 Neb. 423, 207 N. W. 674, 45 A. L. R. 1418; Miller v. Anderson, 183 Wis. 163, 196 N. W. 869, 34 A. L. R. 1529. In the note to Thatcher v. Darr, 16 A. L. R. 1442, it is said: .

''The courts hold that it is part of the duty of every citizen to give his services in testifying in any court proceeding when he is properly summoned to performance of that duty, and that it is against public policy for him to attempt to exact any compensation beyond what is provided by statute for such service. Therefore, any agreement which he may exact from the person desiring his testimony, to compensate him for his time or services beyond the statutory fees, is unenforceable. This is sometimes put upon the ground that the promise to pay is without consideration to support it, because the promise to testify is merely to perform what the law requires, which cannot furnish a consideration. But the majority of the cases put the ruling upon the ground that such a contract is against public policy.''

Here the appellant resided within the jurisdiction of the court, was subject to its process, and could have been

compelled to furnish the evidence in his possession. He had no interest in the controversy between Ledford and Hubbard, except such interest as the contract in question attempted to create. To permit him to contract with one of the litigants for compensation in excess of the statutory fees to which he would have been entitled as a witness and to make the compensation contingent upon the result of the suit would not only tend to encourage perjury but would tend to place litigants at the mercy of witnesses. As said in State v. Nickerson, supra:

> "The tendency of such arrangements is to pervert justice, to bring courts into disrepute, and to cause a lack of confidence therein. The maintenance of such confidence is fundamentally necessary to the promotion of our institutions, and to foster or permit such transactions is to undermine them.

> "Such agreements would lead to the suspicion of each and every witness presented, thus demanding that each be interrogated as to what secret arrangements he had with attorneys or clients as to his compensation. To even ask which, under our present practice, would be to insult the witness and lay such attorney open to court censure, if not more severe punishment, so clean has been our court procedure and conception of duty. The suggestion of such a practice is objectionable and fraught with many dangers. Witnesses, like jurors and court officers, owe a duty to the state to aid in the due administration of affairs of government, for such compensation as the law provides. The least tendency to the contrary should not be tolerated, however innocent the claimed intent."

In view of the tendency of such contracts, we conclude that the contract in question is contrary to public policy, and void. Tending to support this conclusion are the following domestic cases: Wilhoit's Administratrix v. Richardson, 193 Ky. 559, 236 S. W. 1025; Lynn v. Moss, 139 Ky. 637, 62 S. W. 712, 23 Ky. Law Rep. 214; Lucas v. Allen, 80 Ky. 681, 4 Ky. Law Rep. 687.

Wherefore the judgment is affirmed.