**Arthur L. WILLCHER, Appellant,**

v.

**Jeanette WILLCHER, Appellee.**

**Jeanette WILLCHER, Appellant,**

v.

**Arthur L. WILLCHER, Appellee.**

**Nos. 5975, 5977.**

District of Columbia Court of Appeals.

Argued Jan. 24, 1972.

Decided July 11, 1972.

Rehearing Denied Sept. 8, 1972.

---

7.  D.C.Code 1967, § 17–305 (Supp. V, 1972).

Arthur L. Willcher, pro se.

Walter W. Johnson, Jr., Washington, D. C., for Jeanette Willcher.

Before KELLY, KERN and PAIR, Associate Judges.

KERN, Associate Judge:

These are cross-appeals from a determination by the trial court that a property Settlement Agreement entered into by the parties in April 1965 was valid and binding upon them from that date until February 1968, at which time the court concluded they had terminated it by mutual consent.

The husband argues in his appeal that certain action by the wife soon after she executed the Agreement amounted to a repudiation of the Agreement and, therefore, the trial court should have declared it no longer enforceable as of then. The wife contends in her appeal that the Agreement remains valid and enforceable and, accordingly, the trial court erred in concluding that the Agreement had been terminated in February 1968.

■ The husband, in support of his argument that the wife repudiated the Agreement, relies mainly [1] upon the fact that some nine months after it was executed she asked for and obtained from the Montgomery County Circuit Court in Maryland an order increasing by $80 per month what the Agreement provided he was to pay for support of their child.[2] He points to the familiar principle that a party to a marital agreement may not on the one hand refuse to accept its "burden" and then turn around and claim its "benefits." Travis v. Travis, D.C.App., 203 A.2d 173

---

[1]. The husband argues that the wife failed to abide by a provision of the Agreement that she invest with her brother the proceeds of the sale of their jointly-owned home. However, her brother testified that the sale realized less than the amount guaranteed by the husband in the Agreement. The proceeds were then deposited, with the husband's consent, temporarily in a bank until he could make up the deficit. We cannot say upon the record before us that the trial court's conclusion that this action by the wife did not amount to a repudiation of the Agreement was erroneous.

The husband also asserts that the wife's testimony in the Montgomery County court proceeding that she had entered into the Agreement under duress was evidence that she has repudiated the Agreement. However, both that court and our trial court found that the parties had entered into the Agreement freely and were bound by its terms. Since the wife did not assert duress *successfully* in the Maryland action, the husband could not reasonably have relied upon her testimony in that proceeding to believe that she had rescinded the Agreement. *See* Atkins v. United States, D.C.App., 283 A.2d 204, 206 n. 4 (1971) ; Parker v. Sager, 85 U.S.App. D.C. 4, 174 F.2d 657 (1949).

[2]. The parties were married in 1942 and separated in 1963, at which time only one of their children remained unemancipated.

(1964); Cooper v. Cooper, D.C.Mun.App., 35 A.2d 921 (1944). However, we have expressly recognized that the best interest of a child takes precedence over any agreement executed by its parents and that "the provisions in the agreement for child support are always open to later modification by the court upon a proper showing." Davis v. Davis, D.C.App., 268 A.2d 515, 517 (1970).[3] In this case, the court, after a hearing, found that the child's emotional health and well-being required his own separate living quarters at home, which in turn necessitated a larger and more expensive apartment. We cannot say that the court erred in finding changed circumstances and modifying the Agreement on behalf of the child's best interests to require the husband to pay more for its support.

The husband acknowledges that a court may intervene at any time on behalf of a child and modify an agreement its parents may have reached, but he seeks to draw a distinction between a court, *sua sponte,* intervening to modify an agreement for the child's welfare, and a parent, such as in this case, *initiating action herself* to have the court modify the Agreement's provision with respect to child support.[4] We find no merit in this contention because we are at a loss to see how the court could properly discharge its responsibility for the care of its ward, i. e., the child, unless either parent were free to make known to the court the changing needs of that child without fear of invalidating an entire property settlement agreement as a result of giving that information.

We turn now to the wife's appeal from the trial court's determination that the parties by their actions in February 1968 terminated the Agreement. The trial court in reaching that conclusion relied upon the fact that when the husband petitioned the Arlington County court for custody of their minor child, the wife failed to appear and *contest* his suit upon the ground that the Agreement provided that *she* was to have custody. The trial court reasoned that the wife had thereby "acquiesced" in the husband's obvious repudiation of the Agreement and, therefore, the Agreement was terminated as of that time. We think that conclusion was error. The record indicates that the court found the child's best interest would be served by living with the husband upon evidence, among other things, that he had been spending increasingly more time with the husband, without objection from the wife, and had finally taken up permanent residence with him. While we recognize the need and desirability to enforce marital contracts as written, Davis v. Davis, *supra,* we cannot straightjacket the needs of children, which change as they grow, by holding that the support and custody provisions of a property settlement agreement are immutable and impervious to subsequent modification by an equity court upon proper showing.

■ We note that in this case the child support and custody provisions constituted but two of some 20 paragraphs in the Agreement, which settled at length and in detail the property rights of the parties. The Agreement expressly provided for the severability of any "unenforceable" provision. As a general rule, courts have enforced, where possible, the provisions of separation agreements settling property rights between husband and wife which are severable from other clauses in such agreements, *see, e. g.,* Adler v. Nicholas, 381 F. 2d 168, 172 (5th Cir. 1967); Prime v. Prime, 172 Or. 34, 139 P.2d 550 (1943); Puckett v. Puckett, 21 Cal.2d 833, 136 P.2d 1 (1943); 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 33–6

3. *See* Barnett v. Barnett, D.C.App., 243 A. 2d 51 (1968); Doerfler v. Doerfler, D.C. App., 196 A.2d 90 (1963); Grand v. Grand, D.C.Mun.App., 163 A.2d 556 (1960).

4. The wife counterclaimed for additional child support *after* the husband sued in Montgomery County for divorce. He later withdrew that suit and initiated action for divorce in Arlington County, Virginia.

(1967). Indeed, we have encouraged parties to settle their property rights and claims by agreement rather than leave the task to the courts. Davis v. Davis, *supra*; Le Bert-Francis v. Le Bert-Francis, D.C. App., 194 A.2d 662, 663 (1963).

█ We conclude that the Agreement in this case was never intended to depend upon the validity and enforceability of the provisions for the child's support and custody. Therefore, the wife's failure in the Virginia proceeding to insist upon having custody of the child as provided by the Agreement did not constitute an "acquiescence" on her part to a termination of that Agreement.

█ We conclude upon this record, however, that the parties did mutually renounce the Agreement in September 1970 by reason of (1) the husband's action in requesting the trial court to *reduce* that amount of *maintenance for the wife* fixed by the Agreement and (2) the wife's acquiescence to his renunciation by her failure to insist upon the Agreement's provisions, resulting in the trial court's order reducing the amount fixed. Clearly, the Agreement's provision with respect to her *maintenance,* in contrast to its provisions on *child custody and support,* was at the heart of the settlement on their property rights and obligations. Once the wife permitted the husband to refuse to perform such a significant part of the Agreement, she can-

not be heard later to assert its continuing validity and enforce it. *See* Rosenbaum v. Rosenbaum, D.C.App., 210 A.2d 5 (1965); Travis v. Travis, *supra*; Cooper v. Cooper, *supra.*

The judgment from which the husband appeals must be affirmed. The judgment from which the wife appeals must be reversed because it rests upon the erroneous conclusion that the property Settlement Agreement was terminated by the parties on February 23, 1968. We conclude that the Agreement remained in force until September 20, 1970. Whether the trial court in the exercise of its equity jurisdiction should grant specific performance of the Agreement for the period between February 1968 and September 1970 is a matter for its discretion. Rosenbaum v. Rosenbaum, *supra* at 8. *See* also Zouck v. Zouck, 204 Md. 285, 104 A.2d 573 (1954); Hotchkin v. Hotchkin, 105 N.J.Super. 475, 253 A.2d 184 (1969).[5] We remand the case for (a) consideration by the trial court whether specific performance of the Agreement between February 1968 and September 1970 should now be ordered as a matter of equity,[6] and for (b) recomputation of the proper amount of damages consistent with that ultimate determination.[7]

Judgment in No. 5975 affirmed.

Judgment in No. 5977 reversed and remanded for further proceedings.

5. The trial court concluded, after hearing testimony and reviewing the files of this long-pending case, that equity would require the specific performance of the Agreement through February 1968 (R. 111.)

6. The husband apparently has now remarried and the child will within months have reached its majority.

7. The trial court inexplicably failed to make findings and otherwise determine the

wife's complaint for specific performance of the Agreement's provisions that (a) the husband pay certain bills outstanding at the time they executed their Agreement, and (b) maintain in force for her benefit certain insurance policies on his life. The trial court on remand should determine whether it would be equitable under all the circumstances of this case to order their specific performance now.