COX FEEDLOTS, INC., Appellant,

v.

T. V. HOPE, Appellee.

No. 15185.

Court of Civil Appeals of Texas,
San Antonio.

July 3, 1973.

Rehearing Denied Sept. 5, 1973.

Eugene B. Labay, Cox, Smith, Smith, Hale & Guenther, San Antonio, Joe E. Briscoe, Devine, Alto V. Watson, Beaumont, for appellant.

Gordon W. Jones, Franklin D. Houser, Tinsman & Houser, Inc., San Antonio, for appellee.

BARROW, Chief Justice.

Appellee brought this suit seeking to recover rebates illegally paid appellant under a contract pertaining to hauling of livestock and commodities, and to recover damages for breach of said contract. It was conceded that said rebates were illegal, and during the course of the trial, the parties stipulated and agreed that $3,600 was owed appellee thereon. The trial court held, as a matter of law, that the contract was clear and unambiguous, and granted appellee an instructed verdict on the issue of liability. The jury found, in response to the single issue submitted, that appellee sustained damages in the sum of $85,000 by reason of appellant's .breach of the contract. Judgment was entered for the sum of $88,600, and appellant has duly perfected this appeal.

Appellant has presented thirty assignments of error which are briefed under five groups. It urges by ten points that the trial court erred in not granting its motions for instructed verdict and for judgment non obstante veredicto, because the contract was illegal and because of a failure of consideration. It complains by three points of the trial court's action in construing the contract so as to impose liability on appellant as a matter of law. Appellant complains by five points of the instructions given by the trial court in connection with the damage issue. Specifically, appellant points out that appellee's permit to haul was cancelled during approximately six months of the period in question, and that the contract was rescinded after about a year of the three-year period in controversy. It also asserts that the trial court erroneously permitted the jury to award a double recovery by the instruction on consequential damages. Eight points complain that the finding of damages is excessive and without support in proper or sufficient evidence in that the testimony of appellee's expert witness is based on speculation. Finally, appellant asserts by four points that the trial court erred in excluding certain evidence it offered on the damage issue.

The hauling contract sued on was signed on October 30, 1970. Appellant, hereinafter referred to as Cox Feedlots, operated a custom feedlot in Devine. Appellee, hereinafter referred to as Hope, held a Specialized Motor Carrier's Certificate from the Railroad Commission authorizing him to haul livestock and commodities to and from all points within a 25-mile radius of Hondo. The contract provides in part: "Hope and Cox agree that Hope is to haul all livestock and commodities for Cox to and from the Feed lot owned or controlled by Cox, and to and from other points designated by Cox, up to the capacity of Hope's men and equipment."

The principal dispute between the parties was over the construction of this provision. Hope asserted, and the trial court concluded at a pretrial hearing, that as a matter of law, Cox Feedlots was obligated to give Hope first option to haul all livestock and commodities to and from the feedlot owned and operated by Cox Feedlots. Thus, Hope was permitted to project his anticipated earnings over the three-year period based on maximum use of his equipment. On the other hand, Cox Feedlots contended that it was only obligated to give Hope first option to haul all livestock and commodities owned and controlled by Cox Feedlots. It thus sought to show that when cattle owned by a third party were transported to or from the feedlot, Cox Feedlots had no control over who was hired to haul same. In many instances, the owner of the cattle had his own trucks, which were used to haul the cattle; and in other instances, the third party preferred for reasons of his own to use another car-

rier. The trial court, based on its pretrial construction of the contract, kept out most of this latter type of evidence and granted Hope an instructed verdict on liability.

Paragraph III of the contract provides that Cox was to handle the brokerage work, and was to receive ten per cent of the gross income for such service. In June of 1971, the Railroad Commission determined that such brokerage fee was in reality a rebate in violation of law. The parties did not challenge such construction, and both conceded at the trial that such brokerage fees were illegal rebates.[1] Although Hope continued to haul for Cox Feedlots after the brokerage fees were terminated by the Railroad Commission, the amount of hauling given Hope by Cox Feedlots dropped off substantially;[2] and after arbitration failed, this suit for breach of the contract was filed on July 6, 1971.

Cox Feedlots asserts under its first group of points that since the ten per cent provision was an illegal rebate, the contract should not be enforced by the court. Hope affirmatively pleaded the illegality of said provision and sought recovery of the sums retained by Cox Feedlots; however, he urges that the entire contract should not be voided, in that the contract contains a "savings clause" wherein the parties agreed ". . . that if any portion of this Contract is illegal, the remainder of the Contract shall not be affected thereby." He also asserts that there is other consideration in that Hope agreed to give Cox Feedlots first option on the use of his equipment. Furthermore, Hope was able to borrow $12,000 from a bank on the strength of this contract, and thereby, to discharge a note he had given Cox Feed-

lots in 1969, when he purchased its trucks and trailers.

■ The universal rule, which has been consistently followed in Texas and is uniformly set forth by legal treatises and encyclopedias, is that a court will not aid either party to an illegal agreement, whether executory or executed, but will leave the parties where it finds them. Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d 343 (1954); Yost v. Justin Belt Co., Inc., 488 S.W.2d 850 (Tex.Civ.App.—Fort Worth 1973, no writ); Cain v. Franklin, 476 S.W. 2d 952 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.); Mercury Life & Health Co. v. Hughes, 271 S.W.2d 842 (Tex.Civ.App.— San Antonio 1954, writ ref'd); Herrin Transportation Co. v. Marmion, 113 S.W. 2d 291 (Tex.Civ.App.—Beaumont 1938, no writ); 17 C.J.S. Contracts § 272; 6a Corbin on Contracts, Illegal Bargains, § 1521.

■ One of the recognized exceptions to such rule, and one that is relied upon by Hope to uphold said contract, is that where the consideration for an agreement is made up of several parts, some of which are legal while others are illegal, and the legal portions of the consideration can be separated from the illegal portions, the agreement will be upheld as to the legal portions. 17 Am.Jur.2d Contracts § 231. Hope urges application of such exception here, because of the severability clause in the contract.

■ Hope was allegedly promised first option to haul for Cox Feedlots all cattle and commodities to the extent of his capacity, for which he was to receive the prevailing Railroad Commission rate. Cox

---

1. See Article 16, Section 25, Texas Constitution, Vernon's Ann.St.; Articles 911b, 4013, and 6452, Vernon's Tex.Rev.Civ.Stat.Ann.; Article 1690b, Vernon's Tex.Pen.Code Ann.

2. Mrs. Hope kept the books for her husband's business and prepared an exhibit showing the gross monthly receipts from Cox Feedlots. From July 1969, until the contract was signed in October, 1970, Hope averaged approximately $5,000 each month. From November,

1970, through May, 1971, it dropped to about $2,400 each month. The earnings dropped substantially after the Railroad Commission prohibited the brokerage payment in that Hope received about $1,100 during June and July, and less than a few hundred dollars each month thereafter. The reasons for such reduction in hauling were sharply disputed. but rendered largely immaterial under the trial court's construction of the contract.

Feedlots also agreed to handle the brokerage work and not to purchase any trucks to compete with Hope. Hope agreed to give Cox Feedlots ten per cent of the gross income for handling the brokerage work and purported to give Cox Feedlots first option on the use of his equipment. The $12,000 was already owed to Cox Feedlots on a note executed in 1969, and the payment of this prior obligation would not be consideration from Hope to Cox Feedlots.

■ The parties have agreed that Cox Feedlots' obligation to handle the brokerage work and to receive ten per cent of all freight receipts amounted to nothing more than an illegal rebate of the prevailing freight rates. No brokerage work was required or performed. Hope conceded that both parties were at fault in agreeing upon said rebate and thus are in pari delicto. This covenant is obviously a part of the consideration for Cox Feedlots' giving Hope the hauling contract. Otherwise, there would be no advantage for Cox Feedlots to give the hauling to Hope since all carriers must charge the uniform rate. Certainly, there would be no other benefit for Cox Feedlots to urge its customers to give their hauling to Hope. The importance of this consideration is probably reflected in the sharp reduction in Hope's receipts from Cox Feedlots after the Railroad Commission had directed the parties to refrain from dividing the gross receipts.

This situation comes squarely within the holding of Patrizi v. McAninch, supra, where the Supreme Court, in rejecting a similar contention, cited with approval the oft-repeated rule from Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053, 1054 (1896), as follows: ". . . that a prom-

ise made upon several considerations, one of which is unlawful, no matter whether the illegality be at common law or by statute, is void." See also: Yost v. Justin Belt Co., Inc., supra; Funkhouser v. Capps, 174 S.W. 897 (Tex.Civ.App.—Fort Worth 1915, writ ref'd); Jarrett v. Pittsburg Plate Glass Co., 131 F.2d 674 (5th Cir. 1942); 17 C.J.S. Contracts § 289b.

Since the illegal rebate formed a part of the consideration for Cox Feedlots' promise to give Hope first option on all hauling, it cannot be said that such illegal transaction was not any part of Hope's cause of action. Cf. Morrison v. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908 (1941); Norman v. B. V. Christie & Co., 363 S.W.2d 175 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e); Redgrave v. Wilkinson, 208 S.W.2d 150 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e). Furthermore, there is no way of separating this illegal consideration from the legal portion of same. Therefore, the court will not grant its aid in enforcing said contract, but will leave said parties where it finds them.

Accordingly, the trial court erred in entering judgment for breach of such illegal contract. Such error requires us to set aside all of the judgment recovered by Hope except the agreed sum of $3,600, which is not complained of by appellant. It is therefore unnecessary to consider the other assignments of error asserted by appellant.

The judgment of the trial court is reversed and here rendered to provide that Hope do have, and recover of and from Cox Feedlots, the sum of $3,600, and that in all other respects, relief is denied. The costs of this appeal are taxed against Hope.