WESTERN CAB COMPANY, A NEVADA CORPORATION, AND JOHNNIE CROCKETT, APPELLANTS AND CROSS-RESPONDENTS, *v.* CHARLES L. KELLAR AND CORNELIA KELLAR, RESPONDENTS AND CROSS-APPELLANTS.

No. 7295

June 28, 1974                         523 P.2d 842

[Rehearing denied July 26, 1974]

*Boyd, Leavitt & Freedman,* of Las Vegas, for Appellants and Cross-respondents.

*Charles L. Kellar* and *Kermitt L. Waters,* of Las Vegas, for Respondents and Cross-appellants.

## OPINION

By the Court, ZENOFF, J.:

The genesis of the appellant corporation occurred in the early 1950's when Western Enterprises, Inc. was organized to operate the franchise of Western Cab Company. During a subsequent reorganization of Western Enterprises following various financial difficulties, respondent and cross-appellant Charles Kellar obtained an ownership interest in the corporation and assumed responsibility as a corporate officer. Further financial difficulties led to the transfer of all of the corporation's right, title and interest in the franchise to operate the cab company to Kellar. This occurred in July of 1964. In 1966, the corporation's charter was revoked by the state.

Thereafter, appellant Crockett, one of the founders of the business, sought to reactivate the then defunct corporation. In consideration of Crockett's payment of $500.00 and assumption of outstanding obligations of Western Enterprises, Charles Kellar executed an instrument dated May 16, 1968 purporting to convey all of his interest in the business. The agreement, which recited that Kellar was the sole owner of Western Enterprises, was notarized by respondent and cross-appellant, Cornelia Kellar.

Crockett then proceeded to reactivate the company. The corporation's charter was reinstated with the Secretary of State in June of 1968 at which time the corporation's name was changed to Western Cab Company. With the assistance of a substantial cash investment by Herbert Tobman, one of the defendants in the lower court, business was resumed. From June of 1968 through July of 1970, Crockett, Tobman and Myron Leavitt, also a defendant in the lower court action, engaged in the exclusive ownership and management of the cab company. At no time during this interval was any ownership interest asserted for or on behalf of either Charles or Cornelia Kellar.

Respondents first put forth a claim of ownership in June of 1970 when the defendants filed an application with the Taxicab Authority to change the name listed on the certificates of

public convenience and necessity to conform with the new name of the corporation and for authority to issue stock. Charles Kellar appeared at a hearing on the application with the apparent intention of contesting the defendants' ownership of the corporation. That same day, during a luncheon meeting with Tobman, Crockett and Leavitt, it was agreed on behalf of the corporation to pay Kellar $6,000.00 cash and to reimburse him for monies expended on behalf of the corporation between May 16, 1968 and July 16, 1970. In addition, appellant Crockett promised to transfer five hundred of his shares in the corporation to Kellar. In consideration of these promises, Charles Kellar agreed to support the application then pending before the Taxicab Authority and to forbear asserting any claim of ownership in the cab company. In furtherance of this agreement, Kellar appeared before the Authority and gave sworn testimony acknowledging the agreement of May 16, 1968 and receipt of Crockett's $500.00 payment. At that time he represented that on the date of sale he was the sole owner of Western Enterprises, Inc.

Upon failure of the corporation's officers to execute a written memorandum of the luncheon agreement or to pay the agreed consideration, an action was filed on September 24, 1970, on behalf of Cornelia Kellar alleging that by virtue of a transfer from her husband of all stock in Western Enterprises, Inc. in 1964, she was the sole owner of the corporation. Following protracted litigation, the lower court found insufficient credible evidence to support a claim of ownership on behalf of Cornelia Kellar but awarded recovery to her husband Charles on the basis of the agreement relative to his testimony before the Taxicab Authority.

1. There is abundant evidence in the record to refute respondent and cross-appellant Cornelia Kellar's assertion that she acquired the sole ownership of the stock in Western Enterprises, Inc. on December 1, 1964. This evidence includes: (1) an agreement executed by Charles Kellar on May 16, 1968, and notarized by his wife, which states that Charles Kellar is "the sole owner of all rights, interests of Western Enterprises, Inc. . . ." (2) Charles Kellar's sworn testimony before the Taxicab Authority of the State of Nevada to the same effect, and (3) a stock certificate representing 200 shares of stock in Western Enterprises, Inc. endorsed to Cornelia Kellar wherein it appears that the original date of the endorsement has been erased and changed. The trial court's finding,

supported by substantial evidence in the record, will not be disturbed on appeal. Briggs v. Zamalloa, 83 Nev. 400, 432 P.2d 672 (1967).

2. Respondent Kellar asserts as error the lower court's conclusion that the agreement of May 16, 1968 effectively conveyed his interest in the corporation to Crockett for the reason that a stock certificate representing 200 shares in Western Enterprises was not delivered to Crockett. We hold that Kellar is estopped to deny the validity of the transfer by reason of his conduct. On two occasions, in 1966 when the agreement of sale was executed and in 1970 before the Taxicab Authority, Kellar first purported to convey all ownership in Western Enterprises and then testified under oath that he had done so. From June of 1968 to July of 1970, when the cab company was being operated by Crockett, Tobman and Leavitt, the Kellars asserted no ownership rights in the corporation. By virtue of the 1968 agreement, both Charles and Cornelia Kellar had knowledge of the transfer. To entertain a defense of nondelivery at this late stage would be manifestly unjust and tantamount to permitting the perpetration of fraud upon the defendant parties.

3. The trial court erred however in allowing Kellar to recover on the basis of the July 1970 agreement. In consideration of this agreement the lower court found that Charles Kellar's obligations were twofold: (1) to support the application then pending before the Taxicab Authority and (2) to forbear asserting any claim of ownership in Western Cab Company. According to Charles Kellar's own memorandum of the agreement, payment was contingent on the successful outcome of the defendants' application then pending before the Taxicab Authority. Kellar testified in open court that in advance of his testimony before the Authority, he had agreed to testify precisely in the manner suggested by the defendants.

A contract to pay a witness for testifying coupled with the condition that the right of the witness to compensation depends upon the result of the suit in which his testimony is to be used, is contrary to public policy and void for the reason that it is the tendency of such a contract to lead to perjury and the perversion of justice. Burchell v. Ledford, 10 S.W.2d 622 (Ky. App. 1928); see also Apter v. Joffo, 189 N.W.2d 7 (Mich. 1971); Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 95 F.2d 978 (6th Cir. 1937). We do not hesitate to apply

this rule when, as in the present case, the witness's only interest in the outcome of the litigation is that created by contract. See M. Farbman and Sons, Inc. v. Continental Casualty Co., 308 N.Y.S.2d 493, aff'd 319 N.Y.S.2d 775 (1971). Whatever initial interest Kellar may have had in the outcome of the application before the Taxicab Authority, it was superseded by the July 16 agreement promising payment in the event of approval.

All contracts the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void whether in a particular case the purpose of the contract is effectuated. King v. Randall, 44 Nev. 118, 190 P. 979 (1920). For this reason we reverse that part of the decision in the lower court granting recovery to Charles Kellar and affirm in all other respects.

THOMPSON, C. J., and MOWBRAY and BATJER, JJ., concur.

BREEN, D. J., dissenting:

I dissent.

I disagree with that part of the majority opinion which reverses the lower court. I agree with the proposition that a contract made by a witness who testified for a consideration which is contingent upon the outcome of litigation is void as against public policy. However, where that witness is otherwise interested in the result of the litigation; where the witness has a legitimate and otherwise potentially valid claim pertaining to the subject matter of the litigation which he also gives up, there is sufficient consideration to support an enforceable contract.

It is true that Mr. Kellar's testimony was given for a consideration which was, in part, contingent on the outcome of the taxicab proceedings. In addition to that, Mr. Kellar agreed to forbear asserting a claim of right. I do not believe this contract is against public policy because the policy considerations are absent in such a case.

I do not think perjury is promoted any more in this case than testimony which is the result of a compromise of a divorce case or any other compromise litigation between the parties.

When one testifies for a consideration, at least three possibilities arise with respect to that person's status toward the litigation.

If the person has no independent interest in the subject matter, nor the outcome of the proceedings, he is a stranger to the litigation and perhaps the general rule would apply. But one may be an adverse party to the proceedings or one may stand

to gain or lose rights as a result of the proceedings and thus be an "interested witness." In these cases, the fact that part of the consideration itself may have illegal aspects won't defeat the agreement. There is ample authority for this proposition of law. *Johnson v. Country Life Insurance Co.,* 300 N.E.2d 11 (1973); *Schara v. Thiede,* 206 N.W.2d 129 (1973); *Ingle v. Perkins,* 510 P.2d 480 (1973); *Wilson v. Maryland Cas. Co.,* 269 So.2d 562 (1972); *Seufert v. Greenfield,* 496 P.2d 197 (1972); *River Garden Farms v. Superior Court,* 103 Cal.Rptr. 498, 26 Cal.App.3d 986 (1972); *Willcher v. Willcher,* 294 A.2d 486 (1972); *Ferro v. Bologna,* 334 N.Y.S.2d 856, 286 N.E.2d 244 (1972); *Sealy Mattress Co. v. Sealy, Inc.,* 346 F.Supp. 353 (1972); *Cox v. Hope,* 498 S.W.2d 436 (1973); *Thatcher v. Darr,* 199 P. 938; *Dodge v. Stiles,* 26 Conn. 463 (1857).

I believe there was substantial evidence to conclude that part of the consideration for the July 16, 1970 contract was good faith forbearance to assert a prior existing disputed claim. If this were the case, the agreement would be valid and enforceable. For example, at the time of the agreement in Western Cab Company in question, Kellar or his wife were stockholders of record and had been notified of the proceedings before the Taxicab Authority.

The majority's view that Kellar's only interest was created by the contract itself amounts to a substitution of its view of the evidence for that of the trial court. This violates the proposition, used by the majority opinion, that a trial court's finding, if supported by substantial evidence in the record, will not be disturbed on appeal. *Briggs v. Zamalloa,* 83 Nev. 400, 432 P.2d 672 (1967).

The majority opinion concludes that Kellar's only interest in the outcome of the litigation was created by the July 16 contract, which they say is illegal. Yet they also say that "whatever prior interest Kellar may have had in the outcome of the application before the Taxicab Authority, it was superseded by the July 16 agreement promising payment in the event of approval." This is confusing to me because it appears to make the agreement both valid and invalid in order to support the conclusion reached. If the July 16 agreement superseded any prior interest, and I agree it did, it must have been supported by good and sufficient consideration otherwise it would not be enforceable.

I would affirm the lower court because its conclusion is supported by substantial evidence in the record and sound legal theory.