COUNTY OF CLARK, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, APPELLANT, *v.* BONANZA NO. 1; T. L. CORPORATION (MGM GRAND HOTEL, INC.); TRACY INVESTMENT COMPANY, AND J. J. ENTERPRISES OF NEVADA, RESPONDENTS.

No. 11502

BONANZA NO. 2 AND NATHAN JACOBSON, PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, THE HONORABLE J. CHARLES THOMPSON, JUDGE, AND THE COUNTY OF CLARK, RESPONDENTS.

No. 11706

August 14, 1980                    615 P.2d 939

[Rehearing denied November 20, 1980]

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, Clark County, for Appellant.

*Lionel Sawyer & Collins,* and *Stephen L. Morris,* Las Vegas, for Respondents on appeal and for Petitioners.

*Robert J. Miller,* District Attorney, Clark County, and *George Rudiak,* Las Vegas, for Respondents in the mandamus proceeding.

## OPINION

By the Court, BATJER, J.:

This case involves the validity of an indemnity agreement whereby Nathan Jacobson and Bonanza No. 2 promised to pay to Clark County the amount of any condemnation award received by Ruth and Arby Alper for a parcel of land underlying Flamingo Road. We affirm the summary judgment in

favor of Bonanza No. 1, Tracy Investment Co., J. J. Enterprises, and T. L. Corporation because they did not assume the obligation to indemnify the county. We deny the writ of mandate because the agreement is not clearly unenforceable against Jacobson and Bonanza No. 2.

In 1959, Arby and Ruth Alper acquired land abutting Flamingo Road in Clark County. The land was leased to Bonanza No. 1[1] in 1966 for a term ending in 1972 with an option to extend the lease for 50 years.

As a condition to securing building permits, Bonanza No. 1 granted to Clark County a 52-year easement over a portion of the property, measuring 50 feet by 1,000 feet (Parcel 1). In May, 1967, Flamingo Road was widened to include Parcel 1. On June 19, 1968, the county acknowledged the Alpers' ownership and promised not to assert any prescriptive rights to the property underlying the roadway.

On January 16, 1969, the lease was cancelled.[2] On May 26, 1969, Bonanza No. 2, Nathan Jacobson,[3] and Clark County entered into an indemnity agreement. The county promised

> . . . to resist any claim asserted by any such person or persons and to do nothing to impair the right to, or to prevent, unlimited and uncontroverted access to and from said hotel property to said western portion of paved roadway. In this regard County agrees to resist any claim that it does not have an easement for road and highway purposes over said western portion of paved roadway.

Bonanza No. 2 and Nathan Jacobson each promised

> . . . to save County harmless from any damages resulting to County by reason of the claims asserted by any person or persons to said western portion of paved roadway, [and] [i]n the event it shall be finally adjudicated that the alleged fee owners of said western portion of paved roadway may prevent access thereto from the hotel property adjacent and contiguous thereto, and it thereby becomes necessary for the County to condemn for road and highway purposes any or all of the said western portion of paved roadway, to pay to County the amount of any final judgment received by the alleged owners of said western portion of paved roadway or any amount required to be paid therefor by reason of a negotiated settlement. . . .

---

[1]Bonanza No. 1 is wholly owned by Bonanza No. 2.

[2]About this time, Tracy Investment Co. purchased Bonanza No. 2, which had declared bankruptcy. In March, 1969, Tracy sold Bonanza No. 2 to J. J. Enterprises.

[3]Nathan Jacobson was an owner of J. J. Enterprises.

Nathan Jacobson sold J. J. Enterprises and Bonanza No. 2 to Levin-Townsend Computer Corporation in September, 1969. On September 2, 1969, Levin-Townsend, J. J. Enterprises, and Bonanza No. 2 agreed to "indemnify and hold Jacobson [and others] harmless for all costs and expenses . . . arising from any claims made against [them] arising from acts done by [them] within the scope of [their] authority as officers and/or directors of J. J. and Bonanza No. 2".

In 1972, the Alpers filed a complaint against the county to recover damages for inverse condemnation.[4] The county cross-claimed against Bonanza No. 1, Bonanza No. 2, J. J. Enterprises, Nathan Jacobson, Tracy and T. L. Corporation.[5] The county alleged that the cross-claim defendants were bound by the May 26, 1969, agreement to indemnify the county for any damages awarded to the Alpers.

All third-party defendants moved for summary judgment. On September 12, 1978, summary judgment was entered in favor of Bonanza No. 1, J. J. Enterprises, Tracy and T. L. Corporation (hereinafter respondents). Clark County appeals from that judgment. The district judge denied summary judgment for Bonanza No. 2 and Nathan Jacobson (hereinafter petitioners) on November 2, 1978. They now seek a writ of mandamus to compel the district judge to grant summary judgment in their favor.

### Appeal From Summary Judgment

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". NRCP 56(c); Harvey's Wagon Wheel v. MacSween, 96 Nev. 215, 606 P.2d 1095 (1980). Clark County argues that whether or not the May 26, 1969, indemnity agreement binds respondents is a triable issue of fact. Specifically, Clark County contends that the agreement is binding upon all successors in interest to Bonanza No. 2 and Nathan Jacobson, the signatories to the agreement.

As a general rule, none is liable upon a contract except those

---

[4]See Alper v. Clark Co., 93 Nev. 569, 571 P.2d 810 (1977). The district judge's finding that Clark County had condemned Parcel 1 in May, 1967, was not overturned on appeal.

[5]T. L. Corporation had purchased Bonanza No. 2 by the time the cross-claim was filed.

who are parties to it. Paxton v. Bacon Mill and Mining Co., 2 Nev. 257 (1866); Barbara's Lighting Center, Inc. v. Churchill, 540 P.2d 1110 (Colo.App. 1975). If a successor does not promise to satisfy its predecessor's indebtedness or assume the predecessor's obligations, the predecessor's creditors are not entitled to recover against the successor. Eaton v. J. H., Inc., 94 Nev. 446, 581 P.2d 14 (1978); Lipshie v. Tracy Investment Co., 93 Nev. 370, 566 P.2d 819 (1977).

In this case, none of the respondents was party to the May 26, 1969, agreement. Only J. J. Enterprises promised to indemnify Jacobson for claims arising from acts done as an officer or director of Bonanza No. 2 or J. J. Enterprises. Based upon the pleadings and proof in the record, there is no indication that Bonanza No. 1, Tracy and T. L. Corporation assumed the indemnity obligation. Consequently, summary judgment in their favor was proper.

As noted above, on September 2, 1969, J. J. Enterprises promised to indemnify Jacobson for claims arising from his actions as an officer or director of Bonanza No. 2 and J. J. Enterprises. If Jacobson is liable to the county under the May 26, 1969, agreement, and his signature was an act within the scope of his authority as an officer of Bonanza No. 2 or J. J. Enterprises, then Jacobson may pursue his right to indemnification under the September 2, 1969, agreement.

However, the only party entitled to sue on an indemnity contract is the indemnitee, his assignee, or a third party beneficiary. Clark v. Compania Ganadera de Cananea, S. A., 385 P.2d 691 (Ariz. 1963); Fidelity and Deposit Co. of Maryland v. Reed, 108 S.W.2d 939 (Tex.Civ.App. 1937); 41 Am.Jur.2d *Indemnity* § 41; *cf.* Carson Opera House Ass'n v. Miller, 16 Nev. 327 (1881) (liability of a surety may not be extended by implication beyond the strict terms of the contract). Although Clark County may have a right of action against Jacobson pursuant to the May 26, 1969, agreement, it cannot sue Jacobson's indemnitor, J. J. Enterprises, because the September 2, 1969, agreement did not create a direct obligation in the county's favor. The county was not a third-party beneficiary. *Lipshie,* 93 Nev. at 379; Lucerne Motor v. Airways International, 82 Nev. 11, 409 P.2d 622 (1966); *Fidelity and Deposit Co. of Maryland,* 108 S.W.2d at 940–941. There is no factual issue regarding J. J. Enterprises' liability to the county, therefore summary judgment in its favor was proper.

650

No appeal may be taken from a denial of summary judgment. However, a writ of mandamus will issue to compel entry of a summary judgment when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Sandler v. District Court, 96 Nev. 622, 614 P.2d 10 (1980); Manufacturers & Traders Trust v. District Court, 94 Nev. 551, 583 P.2d 444 (1978); Dzack v. Marshall, 80 Nev. 345, 393 P.2d 610 (1964); NRAP 3A(b)(5).

Petitioners Jacobson and Bonanza No. 2 argue that, as a matter of law, they are not liable to Clark County under the May 26, 1969, agreement because it is void and unenforceable. Specifically, petitioners contend that the agreement is not supported by consideration and that it violates public policy.

## A.

Petitioners argue that because Clark County had condemned the roadway in May, 1967,[6] its promise constituted past consideration. A benefit conferred or detriment incurred in the past is not adequate consideration for a present bargain. Smith v. Recrion Corp., 91 Nev. 666, 541 P.2d 663 (1975). However, the county did not promise to condemn the property; it promised to resist claims against its right to use the roadway and to do nothing to impair access to the adjoining hotel property.

Even if the county impliedly bound itself to condemn the parcel if it became necessary, that promise would be valuable consideration. "[W]here on the facts known at the time of the bargain any reasonable person would think a detriment or possible detriment was promised, the consideration is sufficient." 1 Williston on Contracts, 3d Ed. § 119 at 489. On May 26, 1969, the county did not realize that its acts had effected an inverse condemnation of Parcel 1. Rather, the county and petitioners obviously believed that any condemnation would occur in the future. Consequently, the county's promise was sufficient consideration.

## B.

Petitioners also argue that the county had a pre-existing duty to perform the promised acts and, thus, it did not bind itself to do anything it was not already bound to do. Consideration is not adequate when it is a mere promise to perform that which

---

[6]Finding of fact in Alper v. Clark County, 93 Nev. 569, 571 P.2d 810 (1977).

the promisor is already bound to do. Walden v. Backus, 81 Nev. 634, 408 P.2d 712 (1965); Thomas v. Palmer, 49 Nev. 438, 248 P. 887 (1926).

The county's pre-existing duty to resist claims and to insure unrestricted access to hotel property is said to emanate from NRS 403.180 and NRS 4C3.200.[7] Those statutes may give rise to a duty to improve and maintain roads, but they do not compel the county to insure unrestricted access to the hotel property or to resist claims against its right to the road. There is no pre-existing duty to do what it has promised to do in the agreement.

## C.

Petitioners also contend that the county's promise to maintain unlimited access to and from the hotel property is illusory. If the county is not free to abandon the street when the public interest requires such action, then the county's promise is illegal because it violates public policy. Martinez v. Johnson, 61 Nev. 125, 119 P.2d 880 (1941). On the other hand, if the county is free to abandon the road when the public interest favors abandonment, then the county's promise may be illusory. Either way, according to petitioners, the contract is rendered unenforceable.

The county's promise to insure access to the hotel property complements its duty to maintain county roads in proportion to use. NRS 403.200(2). If Flamingo Road falls into disuse, the county has no duty to maintain it. However, the county would not thereby breach its promise to insure unrestricted access because no one would be seeking access.

---

[7]NRS 403.180   Standard county roads.   Designation; maintenance.
    " . . . .
    2.   When the board of county highway commissioners shall have declared and designated any road to be a standard county road, then the cost of maintaining such road shall be paid out of the county general fund in the same manner as provided in NRS 403.460."
    "NRS 403.200   Priority of construction, improvement.
    "1.   The roads designated by the board of county highway commissioners as main county roads shall be the first to be constructed or improved and made to meet the requirements and specifications of standard county roads; but no road or roads shall receive the attention of the board of county highway commissioners or the county road supervisor to the exclusion of the other county roads.
    2.   It is the intention and purpose of this chapter to improve all of the county roads in the proportion of their public travel and their degree of importance to the people of the whole county, and the board of county highway commissioners will be so guided in its operations."

## D.

Petitioners' argument that the county's promises were not bargained for has no merit. Extrinsic evidence is inadmissible to contradict the unambiguous statement of consideration set forth in the agreement. Schieve v. Warren, 87 Nev. 42, 482 P.2d 303 (1971).

## E.

Private parties may legitimately share the cost of eminent domain. *See e.g.* Gruntorad v. Hughes Brothers, 73 N.W.2d 700 (Neb. 1955); *cf.* Aeroville v. Lincoln Power, 71 Nev. 320, 290 P.2d 970 (1955) (federal government agreed to reimburse power district for cost of relocating power lines away from air strip). However, petitioners argue that it is contrary to public policy to indemnify the county for its deliberate and wrongful trespass upon the Alpers' land. Their argument is meritless. The county was not a trespasser; it inversely condemned the property in 1967.

## F.

Petitioners next contend that the promise to insure unlimited access to the hotel property may be viewed as binding the county to one course of action, which is detrimental to the public interest.

A contract with a public body to locate public facilities or highways in a certain place tends to prevent the change or removal of such facilities when the needs or convenience of the public demand. All such contracts tend to operate to the detriment of the public interest and are against public policy and void. Western Cab Co. v. Kellar, 90 Nev. 240, 523 P.2d 842 (1974); King v. Randall, 44 Nev. 118, 190 P. 979 (1920). Even when the consideration inures to the benefit of the public and there is no intentional private advantage, a contract that influences the exercise of official discretion is contrary to public policy and unenforceable because the public is entitled to the free and unconstrained judgment of public officers. *Id.* at 124; Osborne v. Allen, 226 S.W. 221 (Tenn. 1920); 15 Williston on Contracts, 3d Ed. § 1734, at 23.

To the extent the county's obligation is ambiguous, we must construe it to avoid conflict with public policy. It is not clear

that the public stands to lose from the county's bargain. The widening of Flamingo Road, the unrestricted access to the hotel property, and the cost of condemnation being borne by private parties inure to the benefit of the public. Any corresponding detriment, in terms of less official discretion, appears to be remote and speculative. As noted above, the county's promise complements its statutory duty. Consequently, the county's promise is not an improper restraint on official discretion.

### G.

Finally, the petitioners argue that it is against public policy to shift the enhanced liability for inverse condemnation to them. According to petitioners, the county should have promptly compensated the Alpers for the land taken by inverse condemnation. By waiting, and resisting the Alpers' claims, the county has allowed the land value to skyrocket.[8] Petitioners do not believe they should assume the burden of paying the enhanced value.

The agreement sets no time limits upon performance of the promise to indemnify the county for costs arising from condemnation. In fact, the promise to indemnify becomes operable only if it becomes necessary for the county to condemn the parcel. Jacobson and Bonanza No. 2 apparently assumed the risk that condemnation would occur in the distant future. There is no inequity in shifting the enhanced liability to them.

We cannot conclude that, as a matter of law, the May 26, 1969, agreement is unenforceable. Therefore, the district judge's denial of petitioners' motion for summary judgment will not be disturbed.

Summary judgment is affirmed. The writ is denied.

MOWBRAY, C. J., and THOMPSON and MANOUKIAN, JJ., and ZENOFF, SR. J.,[9] concur.

---

[8]The valuation date is the trial date.

[9]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE E. M. GUNDERSON, who voluntarily disqualified himself in this case. Nev. Const. Art. 6, § 19; SCR 10.